Slip Op. 21-104

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, <br><br> Plaintiff, <br><br> and <br><br> FONTAINE INC., ET AL., <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> FONTAINE INC., ET AL., <br><br> Defendant-Intervenors. | Before: Mark A. Barnett, Chief Judge <br> Consol. Court No. 19-00122 |

## <u>OPINION</u>

[Sustaining the U.S. Department of Commerce's remand determination that it lacked statutory authority to promulgate 19 C.F.R. § 351.214(k); vacating 19 C.F.R. § 351.214(k) and the Final Results of Countervailing Duty Expedited Review; setting parameters for prospective application of the vacatur.]

Dated: August 18, 2021

<u>Lisa W. Wang</u>, <u>Andrew W. Kentz</u>, <u>David A. Yocis</u>, <u>Nathanial M. Rickard</u>, <u>Whitney M. Rolig</u>, <u>Sophia J.C. Lin</u>, and <u>Zachary J. Walker</u>, Picard Kentz & Rowe LLP, of Washington, DC, for Plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations.

<u>Joanne E. Osendarp</u>, McDermott Will & Emery LLP, of Washington, DC, for Consolidated Plaintiff/Defendant-Intervenor Government of Canada.

Matthew J. Clark, Arent Fox LLP, of Washington, DC, for Consolidated
Plaintiff/Defendant-Intervenor Government of Québec.

Elliot J. Feldman, Baker & Hostetler, LLP, of Washington, DC, for Consolidated
Plaintiff/Defendant-Intervenor Fontaine Inc.

John R. Magnus, TradeWins LLC, of Washington, DC, for Consolidated
Plaintiff/Defendant-Intervenor Mobilier Rustique (Beauce) Inc.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division,
U.S. Department of Justice, of Washington, DC, for Defendant United States.  With him
on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E.
Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the
brief was Nikki Kalbing, Senior Attorney, Office of the Chief Counsel for Trade
Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Stephan E. Becker, Pillsbury Winthrop Shaw Pittman LLP, of Washington, DC, for
Defendant-Intervenor Government of New Brunswick.

Yohai Baisburd, Cassidy Levy Kent (USA) LLP, of Washington, DC, for Defendant-
Intervenor Scierie Alexandre Lemay & Fils Inc.

Edward M. Lebow, Haynes and Boone, LLP, of Washington, DC, for Defendant-
Intervenors Les Produits Forestiers D&G Ltée and Marcel Lauzon Inc.

Richard L.A. Weiner, Sidley Austin LLP, of Washington, DC, for Defendant-Intervenors
North American Forest Products Ltd, Parent-Violette Gestion Ltée, and Le Groupe
Parent Ltée.


        Barnett, Chief Judge: In this consolidated action, Plaintiff, Committee Overseeing

Action for Lumber International Trade Investigations or Negotiations ("Plaintiff" or "the

Coalition"), challenged the U.S. Department of Commerce's ("Commerce" or "the

agency") authority to promulgate a regulation establishing an expedited review process

to determine individual countervailing duty ("CVD") rates for exporters not individually

examined in an investigation.[1]  *See* Compl. ¶¶ 15–16, ECF No. 2.  Plaintiff disputed the

lawfulness of the regulation, 19 C.F.R. § 351.214(k), as part of its challenge to

Commerce's final results in the CVD expedited review of certain softwood lumber

products from Canada.  *See* Compl. ¶¶ 2, 14–22; *see also Certain Softwood Lumber

Products From Canada*, 84 Fed. Reg. 32,121 (Dep't Commerce July 5, 2019) (final

results of CVD expedited review) ("*Final Results of Expedited Review*"), ECF No. 99-5,

and accompanying Issues and Decision Mem. ("I&D Mem."), C-122-858 (June 28,

2019), ECF No. 99-6.[2]  Plaintiff alleged that Commerce's reliance on section 103(a) of

the Uruguay Round Agreements Act ("URAA" or "the Act"), Pub. L. No. 103-465, 108

Stat. 4809 (1994), as authority for its regulation was misplaced and, thus, that

Commerce's promulgation of the regulation and issuance of the *Final Results of

Expedited Review* exceeded Commerce's statutory authority.  *See* Compl. ¶¶ 15–16.

        In due course, the Coalition filed a motion for judgment on the agency record

pursuant to U.S. Court of International Trade ("USCIT" or "CIT") Rule 56.2 incorporating

the foregoing claim.  *See* Conf. Pl.'s Rule 56.2 Mot. for J. on the Agency R. and

accompanying Conf. Mem. in Supp. of Pl.'s Rule 56.2 Mot. for J. on the Agency R.

("Pl.'s Mem."), ECF No. 101.  Defendant, United States ("Defendant" or "the

---

[1] For ease of reference, the court characterizes the type of proceeding at issue in this case as a "CVD expedited review."

[2] The administrative record associated with the *Final Results of Expedited Review* is divided into a Public Administrative Record ("PR"), ECF No. 99-2, and a Confidential Administrative Record, ECF Nos. 99-3, 99-4.  Commerce also filed a public administrative record associated with the Remand Results.  *See* Index to Admin. [Remand] R., ECF No. 177-2.  Plaintiff filed a joint appendix of documents cited in Parties' comments on the Remand Results.  *See* J.A. to Comments After Remand ("PRJA"), ECF No. 191.  .

Government"), and several Defendant-Intervenors consisting of Canadian softwood

lumber producers and governmental entities, defended the lawfulness of 19 C.F.R.

§ 351.214(k) and the underlying proceeding.  Conf. Def.'s Resp. [to] Pls.' Mots. For J.

on the Agency R., ECF No. 110; Joint Br. of Def.-Ints. Gov't of Can. and Gov't of Que. in

Opp'n to Pl.'s Mot. for J. on the Agency R. ("Jt. Canada Br."), ECF No. 120; [Resp.] of

Def.-Ints. Les Produits Forestiers D&G Ltée and Marcel Lauzon Inc in Opp'n to Pl.'s

Mot. for J. on the Agency R., ECF No. 117; Resp. of Def.-Int. Scierie Alexandre Lemay

& Fils Inc. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 119.[3]

In *Committee Overseeing Action for Lumber Int'l Trade Investigations or*

*Negotiations v. United States* ("*Lumber III*"), the court held, *inter alia*, that "Commerce

exceeded its authority to the extent that it promulgated 19 C.F.R. § 351.214(k) pursuant

to URAA § 103(a)."  44 CIT ___, ___, 483 F. Supp. 3d 1253, 1263–64 (2020).[4]  The

---

[3] A complete list of Defendant-Intervenors in this action includes the Government of Canada, the Government of Québec, the Government of the Province of New Brunswick, Fontaine Inc. ("Fontaine"), Marcel Lauzon Inc. ("Lauzon"), Les Produits Forestiers D&G Ltee ("D&G"), North American Forest Products Ltd. ("NAFP"), Parent-Violette Gestion Ltee, Le Groupe Parent Ltee, Scierie Alexandre Lemay & Fils Inc. ("Lemay"), and Mobilier Rustique (Beauce) Inc. ("Rustique").  *See* Docket.

[4] Prior to *Lumber III*, the court issued an opinion vacating a temporary restraining order requested by the Coalition barring U.S. Customs and Border Protection ("CBP") from liquidating unliquidated entries of softwood lumber produced or exported by Canadian companies that received reduced or *de minimis* rates in the *Final Results of Expedited Review* and denying the Coalition's corresponding request for a preliminary injunction. *See Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States* ("*Lumber I*"), 43 CIT ___, 393 F. Supp. 3d 1271 (2019).  The court also issued an opinion denying the Government's motion to dismiss pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction.  *See Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States* ("*Lumber II*"), 43 CIT ___, ___, 413 F. Supp. 3d 1334 (2019).  While the court summarizes the relevant legal and factual background herein, familiarity with prior opinions is presumed.

court remanded the *Final Results of Expedited Review* for Commerce to consider

various *post hoc* justifications for the regulation offered by Defendant and the

Governments of Canada and Québec and declined to vacate the regulation pending

Commerce's remand redetermination.  *See id.* at 1272–73.

The matter is now before the court following Commerce's redetermination upon

remand.  *See* Final Results of Redetermination Pursuant to Court Remand ("Remand

Results"), ECF No. 173-1.  On remand, Commerce addressed two issues: (1) whether

any statutory authority existed for the agency's promulgation of 19 C.F.R. § 351.214(k);

and (2) in the absence of such authority, what actions Commerce should take with

respect to entries of subject merchandise exported or produced by companies subject

to the CVD expedited review (collectively referred to as "the subject companies") in the

event the court annuls the *Final Results of Expedited Review*.  *See generally id.*

As will be discussed in further detail below, Commerce concluded that it could

not identify an explicit or implicit statutory basis for its regulation that would be

consistent with the court's opinion in *Lumber III*.  *See id.* at 9–12, 19–25.  Commerce

further indicated that it intended to follow the procedure set forth in 19 U.S.C.

§ 1516a(c)(1) with respect to the subject companies, such that "the effect of this

decision would be prospective" and "the rates established as a result of the [CVD]

expedited review would cease to apply 10 days after publication of [a] Notice of Court

Decision Not in Harmony in the *Federal Register*."  *Id.* at 28 & n.124 (citation omitted).[5]

---

[5] Section 1516a(c)(1) requires Commerce to publish in the *Federal Register* "a notice of
a decision of the United States Court of International Trade, or of the United States

The Coalition filed comments opposing Commerce's decision to follow 19 U.S.C.

§ 1516a(c)(1) and arguing that the court should instead vacate 19 C.F.R. § 351.214(k)

and annul the *Final Results of Expedited Review*.  *See* Pl.'s Cmts. on [Remand Results]

("Pl.'s Opp'n Cmts."), ECF No. 182.  Defendant-Intervenors (collectively referred to

herein as "the Canadian Parties") filed comments arguing that Commerce's analysis of

its statutory authority for the regulation was perfunctory and deficient; considerations of

equity preclude rescission of the *Final Results of Expedited Review*; and, to the extent

the *Final Results of Expedited Review* are rescinded, any revised rates should be

prospective only.  *See* Consol. Def.-Ints.' Cmts. in Resp. to [Commerce's] February 17,

2021 [Remand Results] ("Def.-Ints.' Opp'n Cmts"), ECF No. 183.

---

Court of Appeals for the Federal Circuit, not in harmony with [the underlying] determination . . . within ten days from the date of the issuance of the court decision." 19 U.S.C. § 1516a(c)(1).  Such notice may be referred to as a "*Timken* Notice" pursuant to *Timken Co. v. United States*, 893 F.2d 337, 341 (Fed. Cir. 1990).  The statute further requires the *Timken* Notice to apply to imports entered or withdrawn from warehouse on or after the date of publication of the *Timken* Notice.  19 U.S.C. § 1516a(e)(1).  When Commerce misses the ten-day deadline for publication of the *Timken* Notice, Commerce regularly applies its *Timken* Notices as of the date that is ten days following issuance of the court decision.  *See, e.g.*, *Large Power Transformers From the Republic of Korea*, 86 Fed. Reg. 38,980 (Dep't Commerce July 23, 2021) (notice of court decision not in harmony with final results, notice of amended results of review; 2015-16) (where the court issued judgment on July 9, 2021 and the *Timken* Notice was effective as of July 19, 2021; *Drawn Stainless Steel Sinks From the People's Republic of China*, 81 Fed. Reg. 57,474, 58,474 (Dep't Commerce Aug. 25, 2016) (notice of court decision not in harmony with am. final determination pursuant to court decision) (where the court issued judgment on July 24, 2016 and the *Timken* Notice was effective as of July 24, 2016); *Certain New Pneumatic Off-the-Road Tires From the People's Republic of China*, 78 Fed. Reg. 70,917 (Dep't Commerce Nov. 27, 2013) (notice of decision of the [CIT] not in harmony and notice of amended final determination) (where the court issued judgment on October 30, 2013 and the *Timken* Notice was effective as of November 9, 2013).  Commerce appears to have misstated its position in the Remand Results.

The Government filed comments arguing that Commerce's Remand Results comply with the court's directive in *Lumber III* to consider alternative legal bases for the regulation; Commerce is not precluded from relying on 19 U.S.C. § 1516a(c)(1) to implement the court's judgment; and any equitable remedy lies solely within the court's—not the agency's—discretion.  *See* Def.'s Resp. to the Parties' Remand Cmts. ("Def.'s Reply Cmts."), ECF No. 186.  The Canadian Parties filed comments in reply to the Coalition's opposition comments.  *See* Consol. Def.-Ints.' Cmts. in Resp. to Pl.'s March 19, 2021 Cmts. on [Remand Results] ("Def.-Ints.' Reply Cmts."), ECF No. 187.  The Coalition likewise filed comments in reply to the Canadian Parties' opposition comments.  *See* Pl.'s Cmts. in Supp. Of [Remand Results] ("Pl.'s Reply Cmts."), ECF No. 188.

For the reasons discussed herein, the court will sustain Commerce's Remand Results and vacate 19 C.F.R. § 351.214(k) and the *Final Results of Expedited Review*. The court further orders prospective application of its judgment in this case.

BACKGROUND

The URAA amended the domestic antidumping ("AD") and CVD laws in connection with several international trade agreements referred to as the Uruguay Round Agreements.  *See* 19 U.S.C. §§ 3511(a)(1), (d), & 3501(7).[6]  One such agreement is the Agreement on Subsidies and Countervailing Measures ("SCM

---

[6] Section 101(a) of the URAA reflects congressional approval of "the trade agreements described in subsection (d) resulting from the Uruguay Round of multilateral trade negotiations."  19 U.S.C. § 3511(a)(1).  Section 101(b) of the URAA provided for the President's acceptance of the Uruguay Round Agreements.  *See id.* § 3511(b).

Agreement").  *Id.* § 3511(d)(12); *see generally* Agreement Establishing the World Trade

Organization, Apr. 15, 1994, 1869 U.N.T.S. 14, Annex 1A, SCM Agreement.  Pursuant

to Article 19.3 of the SCM Agreement:

> When a countervailing duty is imposed in respect of any product, such countervailing duty shall be levied, in the appropriate amounts in each case, on a non-discriminatory basis on imports of such product from all sources found to be subsidized and causing injury, except as to imports from those sources which have renounced any subsidies in question or from which undertakings under the terms of this Agreement have been accepted.  *Any exporter whose exports are subject to a definitive countervailing duty but who was not actually investigated for reasons other than a refusal to cooperate, shall be entitled to an expedited review in order that the investigating authorities promptly establish an individual countervailing duty rate for that exporter*.

SCM Agreement, art. 19.3 (emphasis added).

The Statement of Administrative Action ("SAA") accompanying the URAA

explains that "Article 19.3 of the [SCM] Agreement provides that any exporter whose

exports are subject to a CVD order, but which was not actually investigated for reasons

other than a refusal to cooperate, shall be entitled to an expedited review to establish an

individual CVD rate for that exporter."  URAA, SAA, H.R. Doc. No. 103–316, vol.1, at

941–42 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4250–51.[7]  The SAA noted that

"[s]everal changes must be made to the [Tariff Act of 1930] to implement the

requirements of Article 19.3."  *Id.*  Thereafter, while the SAA discusses several

---

[7] Congress expressly approved the SAA in the URAA.  *See* 19 U.S.C. § 3511(a)(2).  Further, the SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act [i.e., the URAA] in any judicial proceeding in which a question arises concerning such interpretation or application."  *Id.* § 3512(d).

necessary changes to U.S. trade laws effectuated by sections 264, 265, and 269[8] of the URAA, *id.* at 941–42, *reprinted in* 1994 U.S.C.C.A.N. at 4251, the SAA does not discuss the implementation of CVD expedited reviews.

Section 103 of the URAA delegated authority to Commerce, among others, to promulgate interim and final regulations implementing the provisions of the Act.  *See* 19 U.S.C. § 3513.  Section 103(a) of the URAA delegates authority to "appropriate officers of the United States Government [to] issue such regulations, as may be necessary to ensure that any provision of this Act, or amendment made by this Act, . . . is appropriately implemented."  *Id.* § 3513(a)(2).  Section 103(b) of the URAA authorized the promulgation of "interim regulation[s] necessary or appropriate to carry out any action proposed in the [SAA] approved under section 3511(a) of this title to implement an agreement described in section 3511(d)(7), (12), or (13) of this title" within "[one] year after the date on which the agreement enters into force with respect to the United States."  *Id.* § 3513(b).

On May 11, 1995, Commerce issued interim regulations.  *See Antidumping and Countervailing Duties*, 60 Fed. Reg. 25,130 (Dep't Commerce May 11, 1995) (interim regulations; request for cmts.).  Commerce's interim regulations did not address CVD expedited reviews.  *See id.* at 25,130–33 (discussing the regulations).

On May 19, 1997, Commerce published its final agency regulations concerning the implementation of the URAA.  *See Antidumping Duties; Countervailing Duties*, 62

---

[8] The SAA misattributes changes made by URAA § 269 to URAA § 265.  *See* SAA at 941–42, *reprinted in* 1994 U.S.C.C.A.N. at 4251; URAA § 269(a) (amending 19 U.S.C. § 1677f-1 to add new subsection (e)).

Fed. Reg. 27,296 (Dep't Commerce May 19, 1997) (final rule) ("*Preamble*").  These

regulations finalized new provisions governing new shipper reviews.  *See id.* at 27,318–

22 (discussing 19 C.F.R. § 351.214).  Subsection (k) of the new shipper regulation also

provided for Commerce's implementation of CVD expedited reviews.  *See* 19 C.F.R.

§ 351.214(k) (1998); *Preamble*, 62 Fed. Reg. at 27,321.

Subsection (k) of the new shipper regulation permits a respondent that was not

selected "for individual examination" or accepted "as a voluntary respondent" in a CVD

investigation in which Commerce "limited the number of exporters or producers to be

individually examined" to "request a review . . . within 30 days of the date of publication

in the Federal Register of the [CVD] order."  19 C.F.R. § 351.214(k)(1).  Any company

requesting a CVD expedited review must certify compliance with certain regulatory

requirements.  *See id.* § 351.214(k)(1)(i)–(iii).  An expedited review will be initiated "in

the month following the month in which a request for review is due."  *Id.*

§ 351.214(k)(2)(i).  Additionally, the expedited review will be conducted "in accordance

with the provisions of this section applicable to new shipper reviews," subject to certain

exceptions.  *Id.* § 351.214(k)(3).[9]

---

[9] Those exceptions are:
　　(i) The period of review will be the period of investigation used by the
　　[agency] in the investigation that resulted in the publication of the
　　countervailing duty order;
　　(ii) The [agency] will not permit the posting of a bond or security in lieu of a
　　cash deposit under paragraph (e) of this section;
　　(iii) The final results of a review under this paragraph (k) will not be the
　　basis for the assessment of countervailing duties; and
　　(iv) The [agency] may exclude from the countervailing duty order in
　　question any exporter for which the [agency] determines an individual net

On January 3, 2018, following affirmative determinations of countervailable

subsidization and material injury, Commerce published the CVD order on certain

softwood lumber products from Canada.  *See Certain Softwood Lumber Products From*

*Canada*, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) (am. final aff. [CVD]

determination and [CVD] order) ("*CVD Order*").  On March 8, 2018, Commerce initiated

an expedited review of the *CVD Order* with respect to certain Canadian producers that

were not selected for individual examination during the investigation and had been

assigned the "all-others" rate of 14.19 percent.  *See Certain Softwood Lumber Products*

*From Canada*, 83 Fed. Reg. 9,833 (Dep't Commerce Mar. 8, 2018) (initiation of

expedited review of the [*CVD Order*]); *CVD Order*, 83 Fed. Reg. at 348–49 (noting the

all-others rate).

On July 5, 2019, Commerce issued the *Final Results of Expedited Review*,

pursuant to which the agency calculated reduced rates for Fontaine and its cross-owned

affiliates, Rustique and its cross-owned affiliates, and Matra and Sechoirs de Beauce

Inc. (together, "Matra") and their cross-owned affiliate.  *See* 84 Fed. Reg. at 32,122.

Commerce calculated *de minimis* rates for D&G and its cross-owned affiliates, Lauzon

and its cross-owned affiliates, NAFP and its cross-owned affiliates, Roland Boulanger &

Cie Ltée ("Roland") and its cross-owned affiliates, and Lemay and its cross-owned

affiliates.  *See id.*

---

countervailable subsidy rate of zero or de minimis . . . , provided that the
[agency] has verified the information on which the exclusion is based.
19 C.F.R. § 351.214(k)(3) (citation omitted).

Because D&G, Lauzon, NAFP, Roland, Lemay, and their respective affiliates (collectively, "the excluded companies") obtained *de minimis* rates, Commerce stated it would instruct CBP "to discontinue the suspension of liquidation and the collection of cash deposits of estimated countervailing duties on all shipments of softwood lumber produced and exported by" those companies that were entered on or after July 5, 2019; "liquidate, without regard to countervailing duties, all suspended entries of shipments of softwood lumber produced and exported by" those companies; and "refund all cash deposits of estimated countervailing duties collected on all such shipments." *Id.* With respect to the companies that received a lower—but not *de minimis*—rate (Fontaine, Rustique, Matra, and their respective affiliates) (collectively, "the non-excluded companies"), Commerce stated it would instruct CBP "to collect cash deposits of estimated countervailing duties" at the lower rates calculated in the *Final Results of Expedited Review*. *Id.*

For the *Final Results of Expedited Review*, Commerce relied on section 103(a) of the URAA as authority for 19 C.F.R. § 351.214(k) and its conduct of CVD expedited reviews. *See* I&D Mem. at 18–20. The court's examination of the statutory text, structure, and legislative history compelled the court to conclude otherwise. *See Lumber III*, 483 F. Supp. 3d at 1263–64.

The court reasoned that, in section 103(a), Congress explicitly limited Commerce's regulatory authority to *enacted* provisions and did not "encompass perceived international obligations that Congress did not implement through the URAA."

*Id.* at 1264; *see also id.* at 1264–66.[10]  With respect to statutory structure, the court

explained, *inter alia*, that URAA § 103(b) did not authorize or otherwise support

Commerce's promulgation of 19 C.F.R. § 351.214(k) "because the SAA does not

propose any action to implement CVD expedited reviews."  *Id.* at 1267.  The court

reviewed the SAA and other relevant legislative history and concluded that, on balance,

it supported Plaintiff's position.  *See id.* at 1269.  Lastly, the court rejected the argument

that Congress has acquiesced to Commerce's interpretation of section 103(a).  *See id.*

at 1269–71.  The court remanded the *Final Results of Expedited Review* for Commerce

to consider additional justifications for its regulation.  *See id.* at 1271–73.

    In the Remand Results, Commerce considered several alternative bases for its

regulation.[11]  With respect to section 103(b) of the URAA, Commerce opined that the

statutory provision governing interim regulations, in conjunction with the reference to

Article 19.3 of the SCM Agreement in the SAA, reflects congressional intent "for

---

[10] The court further explained that congressional silence concerning CVD expedited
reviews did not confer authority on Commerce to conduct such reviews, *Lumber III*, 483
F. Supp. 3d at 1264–66; the court's interpretation of URAA § 103(a) was "consistent
with the non-self-executing nature of the Uruguay Round Agreements," *id.* at 1366; and
"[t]he judicial canon of statutory construction referred to as the *Charming Betsy* doctrine
[did] not compel a different outcome" because "[s]ection 103(a) does not . . . directly
implement the United States' international obligations," *id.* at 1267 (citing *Murray v.
Schooner Charming Betsy*, 6 U.S. 64 (1804)).

[11] Commerce briefly revisited section 103(a) of the URAA.  While Commerce
"presume[d]," consistent with *Lumber III*, that the provision does not convey "explicit or
implicit authority to conduct CVD expedited reviews," Commerce stated that in
promulgating 19 C.F.R. § 351.214(k), the agency "ensured that all provisions of U.S.
law are consistent with U.S. obligations under the URAA."  Remand Results at 24.
While Commerce presumably intended to refer to the Uruguay Round Agreements and
not the URAA, Commerce did not, however, identify the particular obligation to which it
referred.

Commerce to have the inherent and implicit authority to conduct [CVD] expedited

reviews and to issue regulations providing for such reviews." Remand Results at 22.

Commerce, however, considered itself "bound by the [c]ourt's holding," *id.* at 22–23 &

n.100 (citing *Lumber III*, 483 F. Supp. 3d at 1267), and, thus, "presume[d]" that section

103(b) does not authorize the regulation, *id.* at 23.

Commerce also addressed congressional approval of the SCM Agreement in

section 101(a) of the URAA and concluded that such a "general reference" does not

confer "express" statutory authority for the regulation. *Id.* at 11. Commerce found,

however, that section 101(a)–(b) of the URAA, together with section 103(a)–(b), affords

Commerce "inherent authority" to promulgate 19 C.F.R. § 351.214(k) and conduct CVD

expedited reviews. *Id.* at 23. Nevertheless, because the court previously found "that no

provision of the URAA provides for CVD expedited reviews," Commerce concluded that

it lacked "inherent authority" to promulgate the regulation pursuant to URAA § 101. *Id.*

With respect to "sections 705(c), 751(a), 751(b), and 777A(e) of the [Tariff Act of

1930]," codified at 19 U.S.C. §§ 1671d, 1675(a),(b), and 1677f-1, Commerce concluded

that none of those provisions provide authority for 19 C.F.R. § 351.214(k) or the conduct

of CVD expedited reviews. *Id.* Specifically, Commerce explained that: (1) 19 U.S.C.

§ 1671d addresses final CVD investigation determinations, *id.* at 11; (2) 19 U.S.C.

§ 1675(b) governs changed circumstance reviews, *id.*; (3) 19 U.S.C. § 1677f-1 governs

Commerce's calculation of "individual subsidy rates for each known exporter or

producer in investigations or administrative reviews" or a reasonable number thereof,

*id.*; and (4), with respect to 19 U.S.C. § 1675(a), "[CVD expedited reviews and

administrative reviews] are separate proceedings that are governed by different

regulations, promulgated according to distinct authorities, and provide different

remedies," *id.* at 12 (quoting I&D Mem. at 26) (alteration in original); *see also id.* at 19–

21.

Commerce also "presume[d]" that "Congress's failure to prohibit CVD expedited

reviews in recent amendments to the [Tariff Act of 1930]" does not signal congressional

acquiescence to Commerce's conduct of CVD expedited reviews.  *Id.* at 10.  Commerce

further "concluded that Commerce's inherent authority to reconsider prior decisions, and

lack of an explicit prohibition on CVD expedited reviews, do not equate to specific

statutory authorization under the URAA to conduct CVD expedited reviews and

promulgate CVD expedited review regulations."  *Id.* at 10–11; *see also id.* at 21.

Commerce therefore concluded that it lacked statutory authority to promulgate 19

C.F.R. § 351.214(k) and conduct CVD expedited reviews.  *See id.* at 12.

With respect to Commerce's treatment of companies covered by the *Final

Results of Expedited Review*, Commerce explained that, pursuant to 19 U.S.C.

§ 1516(c)(1),[12] any change in the applicable rates "would be prospective."  *Id.* at 28.

---

[12] The statute provides that,

> "[u]nless such liquidation is enjoined by the court . . ., entries of
> merchandise of the character covered by a determination of [Commerce]
> contested under subsection (a) shall be liquidated in accordance with the
> determination . . .  if they are entered, or withdrawn from warehouse, for
> consumption on or before the date of publication in the Federal Register
> by [Commerce] of a notice of a decision of the United States Court of
> International Trade, or of the United States Court of Appeals for the
> Federal Circuit, not in harmony with that determination."

JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(i)(4).[13]  The court

reviews an action commenced pursuant to 28 U.S.C. § 1581(i)(4) in accordance with

the standard of review set forth in the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 706, as amended.  *See* 28 U.S.C. § 2640(e).  Section 706 directs the court, *inter alia*,

to "hold unlawful and set aside agency action, findings, and conclusions found to be . . .

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

[or] . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory

right."  5 U.S.C. § 706(2)(A), (C).

DISCUSSION

I.   **Commerce's Authority to Promulgate 19 C.F.R. § 351.214(k) and Conduct CVD Expedited Reviews**

A.   **Parties' Contentions**

The Canadian Parties contend that, "with the partial exception of 19 U.S.C.

§ 1675(a)(1) and section 103(b) of the URAA," Commerce did not meaningfully engage

"with each of the alternative bases."  Def.-Ints.' Opp'n Cmts. at 2.  They urge the court

to remand again for Commerce to do so.  *See id.* at 4.  The Canadian Parties further

contend that 19 U.S.C. § 1675(a)(1) and URAA § 103(b) provide authority for

---

19 U.S.C. § 1516a(c)(1).  As noted, the court declined to enjoin liquidation of the subject companies' entries pending the outcome of this litigation.  *See Lumber I*, 393 F. Supp. 3d at 1278—79.

[13] In *Lumber II*, the court denied the Government's motion to dismiss, finding jurisdiction pursuant to section 1581(i)(4) and not under section 1581(c).  *See* 413 F. Supp. 3d at 1343—47.  CVD expedited reviews do not fall within the statutory provisions identified as a basis for the court's review pursuant to 19 U.S.C. § 1516a and, consequently, the court's section 1581(c) jurisdiction is not available. *See id.* at 1346.

Commerce to conduct CVD expedited reviews and request the court to reconsider its

position concerning the language of section 103(b).  *See id.* at 6–19.  The Canadian

Parties incorporate by reference prior arguments addressing additional statutory bases.

*See id.* at 4 n.13 (citing Jt. Canada Br. at 22–29).

   The Government contends that Commerce adequately considered the alternative

legal bases for CVD expedited reviews and, thus, "further remand is unnecessary."

Def.'s Reply Cmts. at 6; *see also id.* at 6–9.

   The Coalition contends that the Canadian Parties misconstrue the standard of

review.  *See* Pl.'s Reply Cmts. at 4.  According to the Coalition, the court's review of the

statutory bases considered by Commerce on remand "is predicated on the [c]ourt's

analysis of the statutory text, . . . not whether Commerce has provided sufficient

explanation of its conclusion under the substantial evidence standard of review."  *Id.* at

5.  The Coalition further contends that "the plain language of 19 U.S.C. §§ 1671d(c),

1675(b), and 1677f-1(e) is unambiguous" and does not authorize Commerce's

promulgation of 19 C.F.R. § 351.214(k).  *Id.* at 5.  The Coalition also contends that the

court has previously found that 19 U.S.C. § 1675(a)(1) does not contemplate CVD

expedited reviews, *see id.* at 6 (citing *Lumber II*, 413 F. Supp. 3d at 1343), and the court

should decline the Canadian Parties' invitation to reconsider its findings concerning

URAA § 103(b), *see id.* at 7–8.

## B.  Commerce's Remand Results Will Be Sustained

   The court remanded the *Final Results of Expedited Review* for Commerce to

consider whether any statutory provision other than URAA § 103(a) "authoriz[ed] the

agency's promulgation of 19 C.F.R. § 351.214(k)."  *Lumber III*, 483 F. Supp. 3d at

1272–73.  Commerce considered the proffered bases; as to each, Commerce either

presumed that it was incapable of conferring authority in light of the court's prior

statements, *see* Remand Results at 10, 22–24, or concluded that the provision did not

authorize the regulation, *see id.* at 11–12, 19–21.

The APA provides the scope of judicial review governing this action.  The court

therefore reviews Commerce's determination that it lacks authority for its regulation

pursuant to 5 U.S.C. § 706(2)(A).  Thus, the court considers whether Commerce's

explanation is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706(2)(A); *cf., e.g.*, *Serv. Women's Action Network v.

Sec'y of Veterans Affs.*, 815 F.3d 1369, 1374 (Fed. Cir. 2016) (applying the same

standard to a denial of a petition for rulemaking); *Preminger v. Sec'y of Veterans Affs.*,

632 F.3d 1345, 1353 (Fed. Cir. 2011) (same).

While the Canadian Parties take issue with the depth of Commerce's analysis of

certain statutory provisions, *see, e.g.*, Def.-Ints.' Opp'n Cmts. at 2–4, Commerce

considered these alternatives and explained its reasons for finding that the provisions

do not support the regulation.  *See* Remand Results at 9–12, 19–25.  Thus, a remand

for further consideration is unnecessary.  Moreover, the Canadian Parties do not

develop the argument that Commerce's determination is arbitrary, capricious, or an

abuse of discretion.  Instead, they argue that Commerce's statutory interpretations are

largely incorrect.  *See* Def.-Ints.' Opp'n Cmts. at 4 n.13, 6–12.  To resolve these

contentions, the court is guided by the two-part framework set forth in *Chevron U.S.A.*

*Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984).[14]  *Cf.*

*Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*, 883 F.2d 93,

96–97 (D.C. Cir. 1989) (explaining that the court will reverse "an agency's decision not

to initiate a rulemaking only for compelling cause, such as plain error of law or a

fundamental change in the factual premises previously considered by the agency," and

restating that, pursuant to *Chevron*, when congressional intent is unclear, the court must

accept an agency's reasonable interpretation of the substantive terms of a statute the

agency is charged with administering); *Serv. Women's Action Network*, 815 F.3d at

1375.

The Canadian Parties concede that there is no explicit statutory authority for

CVD expedited reviews but argue instead that certain statutory provisions are

nevertheless broad enough to encompass CVD expedited reviews pursuant to a

*Chevron* prong two analysis.  *See* Def.-Ints.' Opp'n Cmts. at 4 n.13 (citing Jt. Canada

Br. at 22–29); *id.* at 6–12.  The court agrees with the Government, however, that

Commerce analyzed each provision and explained its position as to why the provision

did not confer authority for Commerce's promulgation of 19 C.F.R. § 351.214(k).

With respect to section 1675(a)(1), the statute provides for an administrative

review of an order "[a]t least once during each 12-month period beginning on the

---

[14] Pursuant to *Chevron*, the court must first determine "whether Congress has directly spoken to the precise question at issue."  467 U.S. at 842.  If Congress's intent is clear, "that is the end of the matter," and the court "must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842–43.  However, "if the statute is silent or ambiguous," the court must determine whether the agency's action "is based on a permissible construction of the statute."  *Id.* at 843.

anniversary of the date of publication of a countervailing duty order under this subtitle."

19 U.S.C. § 1675(a)(1)(A).  The Canadian Parties' argument turns, in part, on the notion

that there is nothing in the statute that "precludes reviews prior to the anniversary of the

publication of an order, limits reviews to only one per each twelve-month period, or

limits what can be reviewed with respect to an order."  Def.-Ints.' Opp'n Cmts. at 8.  The

U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has, however, "squarely

rejected" the argument that an agency may rely on statutory silence to conduct a

proceeding in years other than those provided by statute.  *Lumber III*, 483 F. Supp. 3d

at 1264–65 (discussing *FAG Italia S.p.A. v. United States*, 291 F.3d 806 (Fed. Cir.

2002), a case in which the appellate court rejected Commerce's reliance on statutory

silence to conduct a duty absorption inquiry in years other than those identified in 19

U.S.C. § 1675(a)(4)).  Section 1675(a)(1) plainly governs reviews beginning no sooner

than one year following the date of publication of an order; thus, it cannot confer

authority for a CVD expedited review proceeding initiated just two months after

publication of an order.  *See* 19 C.F.R. § 351.214(k)(1)–(2) (discussing deadlines

governing requests for and initiation of CVD expedited reviews); Remand Results at 20–

21 (noting the differing timelines for administrative reviews and CVD expedited reviews).

       Section 1675(b)(1) governs changed circumstances reviews.  Commerce may

grant a request for such a review of a countervailing duty investigation determination

when there are "changed circumstances sufficient to warrant a review."  19 U.S.C.

§ 1675(b)(1).  Absent good cause, however, Commerce may not conduct a changed

circumstances review of a determination sooner than "24 months after the date of

publication of notice of that determination."  *Id.* § 1675(b)(4).  In prior briefing, the

Governments of Canada and Québec argued, *inter alia*, that a non-individually

examined company "can show 'good cause' that circumstances have changed" to the

extent the company's assigned rate "bears little resemblance to the company's actual

subsidy rate."  Jt. Canada Br. at 26.  Setting aside the fact that the period of review for a

CVD expedited review matches the period of investigation used in the investigation, 19

C.F.R. § 351.214(k)(3)(i), and Commerce therefore uses some of the same data, *see*

*Preamble*, 62 Fed. Reg. at 27,321, the regulation does not contain a "good cause"

requirement necessary to merit excusal from the statutory timeline, 19 C.F.R.

§ 351.214(k)(1) (stating the requirements for a request for a CVD expedited review).

Thus, Commerce reasonably interpreted section 1675(b)(1) as not providing authority

for the regulation.

      Commerce also rejected 19 U.S.C. § 1671d as a basis for its regulation.  *See*

Remand Results at 19–21.  Section 1671d governs final investigation determinations.

The Governments of Canada and Québec pointed to statutory language requiring

Commerce to "determine an estimated individual countervailable subsidy rate for each

exporter and producer individually investigated," 19 U.S.C. § 1671d(c)(1)(B)(i)(I), to

argue that "nothing . . . in that language requir[es] such individual investigation to occur

during the original investigation," Jt. Canada Br. at 26.  The Governments of Canada

and Québec take the quoted statutory language out of context.  Section 1671d(c)

governs the effect of final affirmative determinations issued pursuant to section

1671d(a).  *See* 19 U.S.C. § 1671d(c)(1). Subsection (a) provides, in general, for a final

determination as to "whether or not a countervailable subsidy is being provided with

respect to the subject merchandise" within 75 days of the preliminary determination.  *Id.*

§ 1671d(a)(1).  Commerce's preliminary determination, in turn, is generally due within

65 days following the date on which Commerce initiated an investigation.  *Id.*

§ 1671b(b)(1).  Section 1671d(c)(1)(B)(i)(I) therefore states the requirements for

Commerce's subsidy calculations as part of its final investigation determination—not in

some later-conducted and entirely separate segment of the proceeding.  Accordingly,

Commerce correctly interpreted 19 U.S.C. § 1671d as not providing authority for 19

C.F.R. § 351.214(k).[15]

The Canadian Parties also argue that Commerce correctly concluded that URAA

§ 103(b) authorized 19 C.F.R. § 351.214(k) and request the court to reconsider its

position with respect to that provision.  *See* Def.-Ints.' Opp'n at 12–19.[16]

---

[15] The Canadian Parties do not present (or incorporate by reference) any arguments addressing Commerce's findings with respect to 19 U.S.C. § 1677f-1 functioning as sole authority for CVD expedited reviews or Commerce's inherent authority to reconsider prior determinations.  *See* Remand Results at 11, 19–21.

[16] The Canadian Parties fail to identify any relevant rule or standard governing the court's reconsideration with respect to this issue.  *See* Def.-Ints.' Opp'n at 12–19. Plaintiff argues that the Canadian Parties' request for reconsideration "is equivalent to a motion for reconsideration under USCIT Rule 59."  Pl.'s Reply Cmts. at 8.  Rule 59(e), which permits the court to consider "[a] motion to alter or amend a judgment" which is served "no later than 30 days after the entry of the judgment," USCIT Rule 59(e), is inapplicable to a non-final order, *see Cabot Corp. v. United States*, 788 F.2d 1539, 1542 (Fed. Cir. 1986) (noting the general rule that "[a]n order remanding a matter to an administrative agency for further findings and proceedings is not final," and, therefore, not appealable) (citation omitted).  Nevertheless, pursuant to USCIT Rule 54(b), "any order or other decision . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims . . . ."  Accordingly, the Canadian Parties' request is properly considered under USCIT Rule 54(b).  *See ABB Inc. v. United States*, 42 CIT

As noted, section 103(b) authorized the issuance of "[a]ny interim regulation necessary or appropriate to carry out any action proposed in the [SAA] . . . to implement an agreement described in section 3511(d)(7), (12), or (13) of [Title 19]," 19 U.S.C. § 3513(b), which includes the SCM Agreement, *see id*. § 3511(d)(12).  The court previously considered the language of section 103(b) in response to the argument that this provision's authorization of an interim regulation indicated that Commerce had equal authority to issue the regulation as a final regulation pursuant to section 103(a). *See Lumber III*, 483 F. Supp. 3d at 1267.  The court rejected the premise of that argument "because the SAA does not propose any action to implement CVD expedited reviews" that would meet the requirements of section 103(b).  *Id*.

Regardless of the degree of discretion accorded by Congress's use of the term "appropriate" to modify "interim regulation," *see* Def.-Ints.' Opp'n Cmts. at 14–15,[17] the

___, ___, 375 F. Supp. 3d 1348, 1352 (2019) (considering a motion for reconsideration pursuant to USCIT Rule 54(b) instead of USCIT 59(e) when the motion pertained to an opinion remanding the matter to Commerce that was nonfinal and, thus, not appealable).

[17] The Canadian Parties argue that the court should give "greater deference" to Commerce's interpretation of section 103(b) than it did for section 103(a) because section 103(b) accords Commerce "substantial" discretion and applies solely to Commerce and the U.S. International Trade Commission.  Def.-Ints.' Opp'n Cmts. at 14 & n.31 (citing *Lumber III*, 483 F. Supp. 3d at 1262 n.16).  The Canadian Parties fail to identify what level of deference the court should accord Commerce's interpretation of section 103(b) in the event the court finds the pertinent language ambiguous.  While the Canadian Parties cite to *City of Arlington v. FCC*, 569 U.S. 290, 297–97 (2013), Def.-Ints.' Opp'n Cmts. at 14 n.32, in that case, the U.S. Supreme Court held that *Chevron* deference should be accorded to an agency's "construction of a[n ambiguous] jurisdictional provision of *a statute it administers*," *City of Arlington*, 569 U.S. at 301 (citation omitted) (emphasis added).  Commerce is not the administering authority for section 103(b).  *See Lumber III*, 483 F. Supp. 3d at 1262 n.16 (discussing relevant provisions).  In any event, the pertinent language in section 103(b) unambiguously

court is not persuaded by Commerce's Remand Results or Parties' briefing to

reconsider its finding that the "SAA does not propose any [relevant] action" for purposes

of the phrase "action proposed in the [SAA]."   *See Lumber III*, 483 F. Supp. 3d at 1267;

Remand Results at 22; Def.-Ints' Opp'n Cmts. at 14; Def.'s Reply Cmts. at 8.[18]

The Canadian Parties argue that "the SAA anticipated that there would be an

expedited review procedure" and, thus, that the requirement for a proposed action is

met.  Def.-Ints' Opp'n Cmts. at 15.  An attempt "to re-litigate . . . arguments . . .

previously raised" is not, however, a basis for reconsideration.   *Totes-Isotoner Corp. v.*

*United States*, 32 CIT 1172, 1173, 580 F. Supp. 2d 1371, 1374 (2008) (citation omitted);

*see also Lumber III*, 483 F. Supp. 3d at 1267 (rejecting the argument that "the reference

to expedited reviews pursuant to Article 19.3 in the SAA constitutes a 'proposed action'"

for purposes of section 103(b)).

The court also is not persuaded to reconsider its finding with respect to section

103(b) as a result of Congress's statement of approval of the SCM Agreement in URAA

§101(a).  *See* Def.-Ints.' Opp'n Cmts. at 15–16.  The Canadian Parties appear to

suggest that the court should interpret the language of section 103(b) more broadly

given Congress's approval.  *See id.*  However, the statement of congressional approval

was a statutory requirement pursuant to the legislative mechanism utilized for

---

precludes the Canadian Parties' interpretation; thus, the court need not resolve this
issue.

[18] Parties also do not address what implications, if any, might arise from the fact that
Commerce did not promulgate 19 C.F.R. § 351.214(k) as an interim regulation or within
the time prescribed for interim regulations, but, instead, issued section 351.214(k) as
part of its final regulations well after the time period provided in section 103(b).  *See*
*supra* pp. 9–10.

congressional implementation of the Uruguay Round Agreements.  *See* 19 U.S.C.

§ 2191(b)(1)(A); 19 U.S.C. § 3511(a) (cross-referencing 19 U.S.C. § 2191).  Further, the

statement of congressional approval was required *in addition to* any new or amended

statutory "provisions[] necessary or appropriate to implement [the Uruguay Round

Agreements]."  19 U.S.C. § 2191(b)(1)(C).  The SAA discusses what statutory

"changes" Congress considered necessary "to implement the requirements of Article

19.3 of the [SCM] Agreement," SAA at 941, *reprinted in* 1994 U.S.C.C.A.N. at 4250, and

a CVD expedited review process as conceived by Commerce was not among them, *see*

*id.* at 941–42, *reprinted in* 1994 U.S.C.C.A.N. at 4251.  Thus, the Canadian Parties'

reliance on URAA § 101(a) to read into the SAA, and, thus, into URAA § 103(b),

authority for an action that is unsupported by the text of the SAA lacks merit.

The court's finding that Congress intended the phrase "action proposed in the

[SAA]" in section 103(b) to encompass the statutory changes discussed in connection

with the implementing bill harmonizes section 103(b) with section 103(a), the scope of

which is limited to enacted provisions.  *See Lumber III*, 483 F. Supp. 3d at 1271.

Finding authority in section 103(b) for a regulation that is plainly not authorized by

section 103(a) would instead introduce a conflict between the provisions, which should

be avoided.  *See, e.g.*, *Maracich v. Spears*, 570 U.S. 48, 68 (2013) ("The provisions of a

text should be interpreted in a way that renders them compatible, not contradictory. . . .

[T]here can be no justification for needlessly rendering provisions in conflict if they can

be interpreted harmoniously.") (quoting Antonin Scalia & Bryan A. Garner, Reading

Law: The Interpretation of Legal Texts 180 (2012)) (alterations original).[19]  Accordingly,

the court declines to reconsider its finding with respect to section 103(b).

In sum, the court will sustain Commerce's determination that the potential

sources of authority considered on remand do not supply a legal basis for the adoption

of 19 C.F.R. § 351.214(k) or Commerce's conduct of CVD expedited reviews.

## II.   Commerce's Treatment of Entries Made by the Subject Companies

### A.  Parties' Contentions

Plaintiff contends that the phrase "set aside" in 5 U.S.C. § 706 means "vacate"

and, thus, the court should vacate 19 C.F.R. § 351.214(k) and the *Final Results of*

*Expedited Review*.  Pl.'s Opp'n Cmts. at 4 (citing *V.I. Tel. Corp. v. FCC*, 444 F.3d 666,

671 (D.C. Cir. 2006)).  Plaintiff further contends that the court should restore the "cash

deposit collection and liquidation status of the companies . . . to a state reflective of

what would already be in place had Commerce not acted *ultra vires*."  *Id.* at 7.  Plaintiff

also contends that section 1516a(c)(1) does not apply because a CVD expedited review

is not a determination enumerated under that subsection.  *See id.* at 7–8.

Plaintiff requests the court to order Commerce or Customs, as appropriate, to: (1)

suspend the liquidation of unliquidated entries of subject merchandise produced or

exported by the companies subject to the CVD expedited review; (2) include subject

---

[19] Having found no ambiguity in the scope of interim rulemaking authority conferred by
section 103(b), the Canadian Parties' arguments that the *Charming Betsy* doctrine
favors their interpretation of ambiguous language within that provision are immaterial.
*See* Def.-Ints.' Opp'n Cmts. at 16.  In any event, as with section 103(a), section 103(b)
"does not . . . directly implement the United States' international obligations" but,
instead, authorizes interim regulations implementing actions proposed in the SAA.
*Lumber III*, 483 F. Supp. 3d at 1267.  "Thus, *Charming Betsy* is inapposite."  *Id.*

merchandise produced by the excluded companies in the *CVD Order*; (3) "[e]ffective as

of the date of the [c]ourt's judgment, collect cash deposits on imports of subject

merchandise produced and/or exported by the expedited review companies at that rate

that would have been applicable to each of these companies had the [*Final Results of*

*Expedited Review*] not been issued," which rate Plaintiff identifies as the rate

"determined by the most recently completed and requested segment of the *CVD Order*

for each of the expedited review companies"; and (4) "assess countervailing duties on

the subject merchandise produced and/or exported by the expedited review companies"

pursuant to "19 C.F.R. § 351.212 but without regard to the [*Final Results of Expedited*

*Review*]."  *Id.* at 11.[20]

      The Canadian Parties contend that voiding the *Final Results of Expedited*

*Review* would result in the assessment of countervailing duties in excess of the net

countervailable subsidy conferred on the companies in violation of 19 U.S.C.

§§ 1671(a), 1671e(a)(1).  *See* Def.-Ints' Opp'n Cmts. at 19–22.  The Canadian Parties

further contend that principles of equity require that the subject companies retain the

status and rates determined in the CVD expedited review even if the court vacates the

regulation.  *See id.* at 23 & n.57 (citing 28 U.S.C. § 1585);[21] *see also id.* at 24 (stating

that equity requires this decision to have "no [e]ffect" on the subject companies, such

---

[20] Relevant here, section 351.212 governs the assessment of countervailing duties
pursuant to an administrative review or new shipper review.  *See* 19 C.F.R.
§ 351.212(b)(2).
[21] Pursuant to 28 U.S.C. § 1585, "[t]he Court of International Trade shall possess all the
powers in law and equity of, or as conferred by statute upon, a district court of the
United States."

that the excluded companies remain excluded from the *CVD Order* and the court should

resolve the remaining challenges of the non-excluded companies); *id.* at 31 (arguing

that rescission may leave the subject companies in a worse position than if they had not

requested a CVD expedited review because the all-others rate from the investigation

(14.9 percent) is higher than the all-others rate from the first administrative review (7.26

percent and 7.42 percent for 2017 and 2018, respectively).

      The Canadian Parties also contend that Commerce's conduct of the review

amounted to harmless error because Plaintiff is unharmed by the *de minimis* margins

received by the excluded companies or to which the non-excluded companies would be

entitled pending their challenges.  *See id.* at 32.  Lastly, the Canadian Parties contend

that, if the court vacates the *Final Results of Expedited Review*, the court "should order

Commerce to initiate new reviews under the appropriate authority (e.g., a changed

circumstances review) and adopt the substantive results from the expedited review,

after allowing the other appeal issues to be heard."  *Id.* at 32–33.

      The Government contends that Commerce is not prohibited from implementing

the court's judgment consistent with 19 U.S.C. § 1516a(c)(1) even if such action is not

required.  Def.'s Reply Cmts. at 12.  The Government further contends that because no

statutory provision addresses how Commerce should treat the subject entries, the court

should accord *Chevron* deference to Commerce's decision to rely on section

1516a(c)(1).  *See id.* at 12–13.  Following this approach, the excluded companies "will

be brought back into the order prospectively at the 14.19 percent all-others rate

calculated in the investigation" and the non-excluded companies "will receive

prospectively either the all-others rate from the investigation, or the rate received in the most recently completed administrative review in which the company participated." *Id.* at 13–14.[22]  The Government also argues that formal revocation of 19 C.F.R. § 351.214(k) is unnecessary because the action is nonfinal pending all appeals and, "if the Remand Results are sustained after all appeals, Commerce would cease conducting expedited reviews." *Id.* at 16.

The Government further relies on the court's decision in *Lumber I* not to enter a preliminary injunction to infer that the court contemplated solely prospective relief. *See id.* at 14.  According to the Government, retroactive application of the all-others rate determined in the investigation "would raise concerns about the procedure afforded" because the "excluded companies had no reason to request administrative reviews of their entries" and the non-excluded companies that "were satisfied with" the rates obtained in the *Final Results of Expedited Review* "also had no reason to request administrative reviews." *Id.* at 14–15.  The Government also contends that the Canadian Parties' reliance on 19 U.S.C. §§ 1671(a) and 1671e(a)(1) is misplaced because those provisions govern investigations and, thus, Commerce would not violate

---

[22] The non-excluded companies were included in the second administrative review of the *CVD Order*.  *See* Def.-Ints.' Reply Cmts. at 3 n.8.  All subject companies (excluded and non-excluded) were included in the third administrative review of the *CVD Order*. *See id.*; Def.-Ints.' Opp'n Cmts. at 30 n.77.

those provisions by rescinding the results of the review and imposing countervailing

duties.  *See id.* at 10.[23]

In their reply comments, the Coalition contends that Commerce's statutory

authority to assign an all-others rate to companies that are not individually investigated

undermines the Canadian Parties' argument that Commerce may not impose

countervailing duties in excess of those determined in the *Final Results of Expedited*

*Review*.  *See* Pl.'s Reply Cmts. at 9–10.  The Coalition also contends that the Canadian

Parties' reliance interests are irrelevant in light of the rule of retroactivity applicable to

judicial decisions.  *See id.* at 10–14 (citing, *inter alia*, *Reynoldsville Casket Co. v. Hyde*,

514 U.S. 749 (1995), and *Harper v. VA Dep't of Taxation*, 509 U.S. 86, 97 (1993)).  As

to the asserted reliance interests, the Coalition also contends that it "raised the issue of

statutory authority multiple times during the Commerce proceeding, including before

Commerce initiated the review," and, thus, the subject companies were on notice of the

issue and "participated . . . at their own risks."  *Id.* at 13 n.4 (citing Obj. to the Dep't's

Conduct of Expedited Reviews (Jan. 23, 2018), PR 12, PRJA Tab 1).

The Coalition further contends that Commerce's promulgation of the regulation

and completion of the CVD expedited review are not amenable to a harmless error

analysis because they are not procedural defects but, rather, "substantive unlawful

---

[23] The Government asserts that Plaintiff waived its request for "reliquidation of already
liquidated entries" because it never requested that relief in its complaint.  Def.'s Reply
Cmts. at 15.  The Government does not cite to the location of any such request, and the
court does not understand Plaintiff to seek reliquidation.  While Plaintiff argues that
nullification of the *Final Results of Expedited Review* should reach previously entered
but unliquidated entries of subject merchandise, Pl.'s Opp'n Cmts. at 9, 11, Plaintiff has
not requested (or presented arguments supporting) reliquidation of liquidated entries.

agency action." *Id.* at 15.  Lastly, the Coalition contends that the court may not order

Commerce to complete a new review adopting the results of the CVD expedited review

given that Commerce lacked authority to conduct the review.  *See id.*

The Canadian Parties filed reply comments in which they support Commerce's

reliance on 19 U.S.C. § 1516a(c)(1) and Commerce's position that any relief should be

prospective.  *See* Def.-Ints.' Reply Cmts. at 4–5.  The Canadian Parties contend that

prospective application of the court's judgment is supported by the "presumption of

correctness" that applies to Commerce findings and the expectations of the parties that

make business decisions in reliance on those findings.  *Id.* at 5–6.  The Canadian

Parties also contend that, to the extent there is a *statutory* requirement for retroactivity,

the court can use its "equitable powers to provide otherwise."  *Id.* at 8–9 (citations

omitted); *see also id.* at 11–12.  Lastly, the Canadian Parties request the court to "stay

the enforcement of its decision" pending all appeals if it does not allow the subject

companies to retain the benefit of the *Final Results of Expedited Review*.  *Id.* at 13.

### B.  Analysis

There are three issues before the court: (1) whether the court should vacate 19

C.F.R. § 351.214(k); (2) whether the court should vacate the *Final Results of Expedited

Review*; and (3) in the event the court vacates the *Final Results of Expedited Review*,

whether the vacatur should operate prospectively or retroactively.  The court addresses

each issue, in turn.

## 1.  Commerce's Regulation, 19 C.F.R. § 351.214(k), Will Be Vacated

With respect to the regulation, the issue is relatively straightforward.  The court is

guided by the standard of review set forth in the APA, which states that the court "shall .

. . hold unlawful and set aside agency action, findings, and conclusions found to be . . .

in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5

U.S.C. § 706(2)(C).[24]  "'Set aside' usually means 'vacate.'"  *V.I. Tel. Corp.*, 444 F.3d at

671–72 (citing Black's Law Dictionary 1404 (8th ed. 2004)).[25]  Thus, "'[w]hen a

reviewing court determines that agency regulations are unlawful, the ordinary result is

that the rules are vacated—not [just] that their application to the individual petitioners is

proscribed.'"  *Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409

(D.C. Cir. 1998) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n. 21 (D.C. Cir.

1989));[26] *see also Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 & n.5 (D.C. Cir.

---

[24] "'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).
[25] The U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") interpreted the phrase "set aside" as it appeared in the FCC's regulations pursuant to which the FCC vacated an order and "restored the *status quo ante*," but noted that "[t]he result would be the same as if a court" had set aside the order "pursuant to . . . 5 U.S.C. § 706(2)."  *V.I. Tel. Corp.*, 444 F.3d at 671–72.
[26] The opinions of the D.C. Circuit are not binding on this court.  However, to the extent the Federal Circuit has not addressed any aspect of the issue of remedy pending before the court, the court finds judicial precedent from the D.C. Circuit instructive in light of the court's expertise in the area of administrative law.  *See, e.g.*, *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 535 n.14 (1978) (observing that "the vast majority of challenges to administrative agency action are brought to the [D.C. Circuit]"); *see generally* Richard J. Pierce, Jr., *The Special Contributions of the D.C. Circuit to Administrative Law*, 90 GEO. L.J. 779 (2002).  The Federal Circuit has done likewise. *See Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1367–68, 1379–81 (Fed. Cir. 2001) (following *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993)).

2014) (characterizing vacatur as the "normal remedy" when an agency action is

unlawful and finding it "clearly appropriate . . . under the APA"); *Chlorine Chemistry*

*Council v. EPA*, 206 F.3d 1286, 1291 (D.C. Cir. 2000) (vacating a rule the court found to

be arbitrary and capricious and in excess of statutory authority under the APA);

*Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 51–52 (D.D.C. 2020) (rejecting the argument

that vacatur was "not appropriate in [that] case as a matter of the equities" and stating

that "vacatur is the norm whe[n], as here, the deficiencies that the court has identified

are substantively fatal") (citation omitted).  Indeed, the Federal Circuit has vacated an

agency action in part—a precedential general counsel opinion issued by the U.S.

Department of Veterans Affairs ("VA")—when an opinion expressed therein incorrectly

interpreted a statute and therefore exceeded the VA's authority pursuant to 5 U.S.C.

§ 706(2)(A) and (C).  *See Splane v. West*, 216 F.3d 1058, 1062, 1070 (Fed. Cir.

2000).[27]

       Accordingly, the court concludes that vacatur of the regulation is appropriate.[28]

---

[27] In *Dorbest Ltd. v. United States*, the Federal Circuit "invalidate[d]" 19 C.F.R.
§ 351.408(c)(3) based on the appellate court's finding that it was inconsistent with 19
U.S.C. § 1677b(c)(4)(A), the statute pursuant to which Commerce promulgated the
regulation.  604 F.3d 1363, 1372 (Fed. Cir. 2010).  Section 351.408(c)(3) remains in the
Code of Federal Regulations.  *See* 19 C.F.R. § 351.408(c)(3) (2020).  The facial attack
on section 351.408(c)(3) at issue in *Dorbest* arose under 19 U.S.C. § 1516a as part of a
challenge to a Commerce antidumping duty investigation determination.  *See* 604 F.3d
at 1366.  The Federal Circuit thus had no occasion to address the requirements of the
APA and did not explain its choice of terminology or the difference—if any—between
vacating a regulation and invalidating it.

[28] The Government asserts that Plaintiff has waived any request for the court to order
formal revocation of the regulation because Plaintiff failed to request such relief in its
complaint.  Def.'s Reply Cmts. at 15; *see also* Pl.'s Opp'n Cmts. at 8–9, 10–11
(requesting the court to order Commerce to withdraw the regulation).  Because "notice

### 2.   The *Final Results of Expedited Review* Will Be Vacated

Turning to the second issue, while vacatur of the regulation "restore[s] the prior *regulatory* status quo," *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 415–16 (D.D.C. 2020) (citing *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004); *Nat'l Parks Cons. Ass'n v. Jewell*, 62 F. Supp. 3d 7, 21 (D.D.C. 2014)), vacatur does not necessarily "erase[] from legal existence all *past* adjudications under the vacated rule," *id.* at 415 (citing *Heartland By-Prods., Inc. v. United States*, 568 F.3d 1360, 1366–67 (Fed. Cir. 2009)).[29]   It is, however, "uncontroversial . . . that, when a court with jurisdiction finds that the plaintiffs before it were harmed by an agency decision issued under an illegal rule, the court should vacate that wrongful decision as a remedy."   *Id.* at 416 (citing *W.C. v. Bowen*, 807 F.2d 1502 (9th Cir. 1987), a case in which the U.S. Court of Appeals for the Ninth Circuit vacated adverse decisions issued to a class of Social Security claimants pursuant to an invalid review program).[30]

---

and comment procedure is not required whe[n] a court vacates a rule after making a finding on the merits," *Nat'l Parks Cons. Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009) (citing *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 872 (D.C. Cir. 2001)), the court declines to order Commerce to formally repeal 19 C.F.R. § 351.214(k).

[29] In *Heartland*, a case brought pursuant to the court's jurisdiction under 1581(h) for pre-importation review of customs rulings in certain limited circumstances, the Federal Circuit held that a prior related decision "was retroactive with respect to entries made before the date the mandate issued in [that case]," but that did "not mean that final judicial or administrative decisions are to be reopened," for example, liquidations that have since become final. 568 F.3d at 1366–67.

[30] *D.A.M.* addressed the propriety of a temporary restraining order barring removal of asylum seekers from the United States pursuant to an order of expedited removal issued under an invalid agency rule.  *See* 486 F. Supp. 3d at 407.  The *D.A.M.* court explained that vacatur of the rule meant that the government could not "issue any more orders of removal under that rule, but it [did] not mean that petitioners' removal orders (along with thousands of others) were automatically extinguished by operation of [that]

Accordingly, courts have invalidated specified agency actions taken pursuant to an invalid rule. *See, e.g.*, *Kiakombua*, 498 F. Supp. 3d at 57–59 (requiring new credible fear determinations for plaintiffs negatively affected by prior determinations conducted in accordance with an invalid agency manual); *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 35–37 (D.D.C. 2020) (setting aside removal orders for the five plaintiffs before the court while declining to set aside orders for non-parties); *Waterkeeper All., Inc. v. Wheeler*, No. CV 18-2230 (JDB), 2020 WL 1873564, at *6–*7 (D.D.C. Apr. 15, 2020) (vacating agency approval of a state regulatory program following the D.C. Circuit's vacatur of an agency policy necessary to the program's approval); *W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1085–89 (D. Idaho 2020) (vacating provisions of a land management policy and setting aside certain affected lease sales).

While examples in the trade context are few, those that exist are consistent with the foregoing cases. In *Dorbest*, for example, the Federal Circuit required Commerce to recalculate normal value without regard to the labor valuation regulation the court held to be invalid. *See* 604 F.3d at 1272–73. In *FAG Italia S.p.A. v. United States*, the CIT remanded an administrative review determination to Commerce "to annul all findings and conclusions made pursuant to [a] duty absorption inquiry" the agency lacked statutory authority to perform. 24 CIT 587, 596 (2000), *aff'd in part*, 291 F.3d 806 (Fed. Cir. 2002).

---

judgment." *Id.* at 416. The court ultimately declined to invalidate the removal orders based on the conclusion that the court lacked subject matter jurisdiction to do so. *See id.* at 416–19.

Accordingly, the court will vacate the *Final Results of Expedited Review*.  The court must, however, address the implications of vacatur of the underlying determination.

### 3.  Rescission Shall Operate Prospectively

In looking for judicial guidance with respect to how the court should direct implementation of its decision to vacate the *Final Results of Expedited Review*, the court has found *National Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281 (D.C. Cir. 1995), to be useful.  Therein, the D.C. Circuit confronted the question whether the Federal Energy Regulatory Commission ("FERC") erred in retroactively applying a prior appellate court decision that vacated an earlier FERC order.  *Id.* at 1282–83.  Upon review of judicial precedent concerning retroactive application of federal court decisions, the D.C. Circuit held that FERC's decision to apply retroactively the appellate court's vacatur of its order was lawful and that none of the recognized exceptions to retroactivity were met.  *See id.* at 1286–90.

In so holding, the D.C. Circuit rejected the argument that an earlier three-part test[31] providing for prospective application of a federal court decision "survived as a remedial doctrine under which [the court] could grant relief to a party that had acted in

---

[31] The three-part test was announced in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–08 (1971), and considered: "(1) whether the decision announced 'a new principle of law'; (2) whether non-retroactive application would undermine the purpose of that decision; and (3) whether retroactive application would work a significant inequity."  *Nat'l Fuel*, 59 F.3d at 1284 (citation omitted); *see also Chevron Oil*, 404 U.S. at 106–07.

reliance upon the law as it stood prior to [its] decision supposedly announcing a new

rule of law." *Id.* at 1287–88.  The appellate court explained:

> In *Hyde*, the Supreme Court clearly held that retroactive application of a
> judicial decision cannot, *except in certain limited and specifically defined
> circumstances*, be blunted at the remedial stage. The plaintiff in *Hyde*
> acknowledged that her case was governed by *Harper* and that a prior
> decision of the Supreme Court had "retroactively invalidated the tolling
> provision that [made] her suit timely."  She nevertheless asked the Court
> to allow her suit to go forward, "not[ing] the possibility of recharacterizing
> *Chevron Oil* as a case in which the Court simply took reliance interests
> into account in tailoring an appropriate remedy for a violation of federal
> law."  The Court per Justice Breyer, squarely rejected that argument . . . .

*Id.* at 1288 (quoting *Hyde*, 514 U.S. at 749, 752) (first and second alterations in original)

(emphasis added) (citations omitted).[32]  The appellate court concluded that *Hyde*

generally prevents a court from departing, "even at the remedial stage, from the rule of

*Harper* requiring that a judicial decision be applied retroactively."  *Id.*  Thus, when

"*Harper* is applicable," prospective "application of a prior decision can be awarded only

in four specific circumstances," *id.*, such as when

> [a] court may find (1) an alternative way of curing the constitutional
> violation, (2) a previously existing, independent legal basis (having nothing
> to do with retroactivity) for denying relief, or (3) as in the law of qualified
> immunity, a well-established legal rule that trumps the new rule of law,
> which general rule reflects both reliance interests and other significant
> policy justifications, or (4) a principle of law . . . that limits the principle of
> retroactivity itself.

---

[32] *Harper* holds that the "Court's application of a rule of federal law to the parties before
the Court requires every court to give retroactive effect to that decision."  509 U.S. at 90;
*see also id.* at 97 ("When this Court applies a rule of federal law to the parties before it,
that rule is the controlling interpretation of federal law and must be given full retroactive
effect in all cases still open on direct review and as to all events, regardless of whether
such events predate or postdate our announcement of the rule.").  In *Hyde*, the Court
recognized that "*Harper* overruled *Chevron Oil* insofar as the case (selectively)
permitted the prospective-only application of a new rule of law."  514 U.S. at 752.

*Id.* (quoting *Hyde*, 514 U.S. at 759) (second alteration in original).

        The D.C. Circuit then turned to the question whether *Harper* and *Hyde* apply in the context of agency action.  *See id.*  The court explained that although the rule of retroactivity has constitutional dimensions, it is also based on the principle "that the 'selective application of new rules violates the principle of treating similarly situated parties the same.'"  *Id.* at 1289 (quoting *Harper*, 509 U.S. at 95).  Thus, the appellate court could "see no reason why that pre-constitutional rationale would apply with any less force when it falls to an agency rather than a court to apply a judicial decision."  *Id.* (citation omitted).  The appellate court distinguished "between an administrative agency's retroactive application of a judicial decision," at issue in *National Fuel*, "and [an] agency's retroactive application of its own adjudicative decision," as to which an agency may have greater flexibility.  *Id.*  With respect to the former circumstance, the D.C. Circuit concluded that, absent compelling reasons, "the decision of a federal court must be given retroactive effect regardless whether it is being applied by a court or an agency."  *Id.*[33]

---

[33] The court elaborated that,

> [b]ecause the decision of an Article III court . . . announces the law "as though [it] were finding it[,] discerning what the law is, rather than decreeing what it is . . . changed to, or what it will tomorrow be," all parties charged with applying that decision, whether agency or court, state or federal, must treat it as if it had always been the law.  The agency must give retroactive effect to the ruling of a federal court because of the nature of that court.

*Nat'l Fuel*, 59 F.3d at 1289 (quoting *James B. Beam Distilling Co. v. Ga.*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in the judgment)).

Accordingly, the court considers, consistent with *Hyde*, *Harper*, and *National Fuel*, whether there are compelling reasons to depart from the presumption that Commerce must apply retroactively this court's decision to vacate the *Final Results of Expedited Review* by restoring the cash deposit and liquidation status of the subject companies and, in particular, their prior entries, to the position they would have been in had the proceeding never occurred.  To that end, Congress has enacted a detailed statutory scheme governing AD/CVD proceedings which provides for both retrospective and prospective effect with respect to both Commerce and court decisions under specified circumstances.  While this case is atypical given the lack of statutory authority for CVD expedited reviews, the court nevertheless finds that application of that congressionally approved scheme particular to trade cases, providing for prospective relief, is merited.

When Commerce finds that "countervailable subsidization is occurring," 19 C.F.R. § 351.210(a) (defining "final determination[s]"), Commerce must determine an estimated individual countervailable subsidy rate for each exporter and producer individually investigated as well as an "estimated all-others rate for all exporters and producers not individually investigated."  19 U.S.C. § 1671d(c)(1)(B)(i)(I).  Commerce must then "order the posting of a cash deposit, bond, or other security . . . for each entry of the subject merchandise in an amount based on the estimated individual countervailable subsidy rate, the estimated all-others rate, or the estimated countrywide subsidy rate."  *Id.* § 1671d(c)(1)(B)(ii).  "[T]he cash deposit rates established in an investigation are prospective because they affect future entries, 'not just those made

within a specific time period.'"  *Lumber I*, 393 F. Supp. 3d at 1278 (quoting *NSK Corp. v.*
*United States*, 31 CIT 1962, 1965 (2007)).

Contrary to the prospective nature of cash deposits and "[u]nlike the systems of
some other countries, the United States uses a 'retrospective' assessment system
under which final liability for antidumping and countervailing duties is determined after
merchandise is imported."  19 C.F.R. § 351.212(a).  This retrospective approach
requires that "the amount of duties to be assessed is determined in a review of the order
covering a discrete period of time."  *Id.*  When an administrative "review is not
requested, duties are assessed at the rate established in the completed review covering
the most recent prior period or, if no review has been completed, the cash deposit rate
applicable at the time merchandise was entered."  *Id.*

While assessment is therefore retrospective because it covers past entries, a
decision of the CIT or the Federal Circuit "not in harmony with" Commerce's
determination in a CVD investigation or administrative review is prospective unless the
court grants an interested party's request for injunctive relief.  19 U.S.C. § 1516a(c)(1)
(cross-referencing subsection (c)(2)).[34]  In this case, the court denied Plaintiff's request

---

[34] Specifically, section 1516a(c)(1) provides for the liquidation of entries subject to
certain Commerce determinations in accordance with the agency determination "if they
are entered, or withdrawn from warehouse, for consumption on or before the date" on
which Commerce publishes a *Timken* Notice in the Federal Register, unless "such
liquidation is enjoined by the court" pursuant to subsection (c)(2).  19 U.S.C.
§ 1516a(c)(1); *see also supra* note 5 (defining "*Timken* Notice").  Prospective
application of adverse court decisions is rooted in the presumption of correctness that
attaches to agency determinations.  *See* H.R. Rep. No. 96-317, 96th Cong., 1st Sess.
182 (1979).  While the presumption of correctness was "modified" when Congress
authorized the CIT to enter statutory injunctions, section 1516a(c)(1) continues to reflect
that presumption.  *Id.*

for preliminary injunctive relief.  *See Lumber I*, 393 F. Supp. 3d at 1280.[35]  Although the

liquidation provisions set forth in 19 U.S.C. § 1516a(c)(1) are not directly applicable to

CVD expedited reviews because they are not proceedings enumerated under section

1516a(a) (and otherwise lack statutory authority), the statute nevertheless reflects

unambiguous congressional intent concerning the circumstances under which

prospective relief is appropriate in trade cases.[36]

> The court finds that the principle of prospective application of a court decision not

in harmony with Commerce AD/CVD determinations absent an injunction constitutes a

sufficient limit on the retroactive application of the court's decision herein.  *See Hyde*,

514 U.S. at 759 (providing for the identification of legal principles operating to "limit[] the

principle of retroactivity itself"); *id.* at 761 (Kennedy, J., concurring) (stating that the

majority opinion did not foreclose solely prospective effect in "exceptional cases").

Indeed, when the court denied Plaintiff's motion for a preliminary injunction, the court

---

[35] The court considered Plaintiff's motion for a preliminary injunction pursuant to the traditional four factors set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  *See Lumber I*, 393 F. Supp. 3d at 1276.  Consistent with the court's exercise of jurisdiction pursuant to 28 U.S.C. § 1581(i), Plaintiff did not, strictly speaking, request statutory injunctive relief.

[36] This case is governed by the APA as a result of the failure to ground CVD expedited reviews in the provisions of the URAA; however, the case otherwise reflects the characteristics of a trade case.  *See, e.g.*, Order (Nov. 4, 2019), ECF No. 92 (requiring, with Parties' consent, the "filing and confidentiality protections afforded to all documents forming the administrative record underlying the challenged administrative determination" to "follow the procedures set forth in Rule 73.2" and the disposition of this case to "follow the procedures set forth in Rule 56.2").  Rules 56.2 and 73.2 generally apply to actions described in 28 U.S.C. § 1581(c), which includes actions arising pursuant to 19 U.S.C. § 1516a.  *See* CIT Rule 56.2 ("Judgment on an Agency Record for an Action Described in 28 U.S.C. § 1581(c)"); CIT Rule 73.2 ("Documents in an Action Described in 28 U.S.C. § 1581(c), Except an Action Described in Section 517(g) of the Tariff Act of 1930, or (f)").

permitted the liquidation of subject entries in accordance with the *Final Results of Expedited Review*.  The court anticipated that, if Plaintiff prevailed on count one of its complaint, the excluded companies "would be reinstated in the *CVD Order* with the concomitant collection of cash deposits and suspension of liquidation," *Lumber I*, 393 F. Supp. 3d at 1278,[37] and future entries "would be subject to the all-others rate established in the *CVD Order* pending a subsequent review," *id.* at 1279.  The potential for retroactive collection of cash deposits and assessment of duties on past entries by the companies excluded by the *Final Results of Expedited Review* is solely a function of the fact that entries remain unliquidated by virtue of the suspension of liquidation in place in connection with the corresponding administrative review of the antidumping duty order on certain softwood lumber from Canada.[38]  As discussed below, it is simply

---

[37] This expectation is consistent with the statutory scheme. When Commerce issues a final affirmative determination following a CVD investigation but nevertheless excludes a company from the resulting CVD order, and the company is subsequently reinstated in the order following judicial review, Commerce does not collect cash deposits retroactively.  Rather, pursuant to 19 U.S.C. § 1516a(c)(1), an erroneously excluded company's entries made before Commerce's publication of a *Timken* Notice would liquidate exclusive of countervailing duties.  Following publication of the *Timken* Notice, the excluded companies would be reinstated in the relevant CVD order with the associated suspension of liquidation and collection of cash deposits on future entries in accordance with the CVD rate established in the investigation determination (subject to revision on judicial review).  While CVD expedited reviews are not investigation determinations issued pursuant to Commerce's authority under 19 U.S.C. § 1671d, "the results of an expedited review are akin to a final investigation determination," *Lumber I*, 393 F. Supp. 3d at 1278, because they "provide a noninvestigated exporter with its own cash deposit rate prior to the arrival of the first anniversary month of the order, at which point the exporter may request an administrative review," *id.* (quoting *Preamble*, 62 Fed. Reg. at 27,321).

[38] In November 2017, Commerce issued a final affirmative determination in its antidumping duty investigation of certain softwood lumber products from Canada. *See Certain Softwood Lumber Products From Canada*, 82 Fed. Reg. 51,806 (Dep't

not possible to fully "unscramble the egg" for the unliquidated entries.  *Cf. Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) (declining to vacate unlawful agency action when the court had denied preliminary relief, leading to the establishment of a defective agency program pursuant to which land was plowed under; observing that "[t]he egg has been scrambled and there is no apparent way to restore the status quo ante").[39]

Plaintiff argues that the court must endeavor to place the subject companies— the "part[ies] subject to the agency action"—"in the position [they] would have been in, but for the wrongful agency action."  Pl.'s Opp'n Cmts. at 6.[40]  That is, however, impossible.  Through the passage of time, opportunities to request administrative reviews have come and gone with concomitant consequences.  The excluded

---

Commerce Nov. 8, 2017) (final aff. determination of sales at less than fair value and aff. final determination of critical circumstances); *see also Certain Softwood Lumber Products From Canada*, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018) (antidumping duty order and partial am. final determination).

[39] *Sugar Cane Growers* addressed the separate though related question of remand versus vacatur and declined to vacate the unlawful agency action when it was not possible to restore the status quo ante and it was possible for the relevant agency to cure the defect.  *See* 289 F.3d at 97–98.  While in this case the court finds it appropriate to vacate the *Final Results of Expedited Review* because the deficiency in Commerce's regulation—a lack of statutory authority—cannot be cured on remand, the cases are analogous to the extent that subsequent events tied to the unlawful action have made full restoration impossible.

[40] Plaintiff cites to *Marshall v. HHS*, 587 F.3d 1310, 1317 (Fed. Cir. 2009), and *Kerr v. National Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984), but those opinions address employment reinstatement and backpay following successful litigation of wrongful termination claims and are inapposite to whether retroactivity is required here.  *See* Pl.'s Opp'n Cmts. at 60.

companies were unable to participate in the first or second administrative reviews,[41] and

the non-excluded companies elected not to participate in the first administrative review

based on the favorable rate obtained in the underlying proceeding.[42]  *See* Def.-Int.'s

Opp'n Cmts. at 29–30.  Thus, applying a cash deposit rate based on either the all-

others rate from the investigation or the final results of administrative review for the

most recent review in which the company was reviewed constitutes the most

appropriate means of effectuating the court's decision.

Additionally, while the court disagrees with the Government that *Chevron*

provides the appropriate legal framework for resolving this issue, *see* Def.'s Reply

Cmts. at 12,[43] there is some significance to the Government's position concerning

---

[41] Commerce rescinded the first administrative review for the excluded companies.  *See Certain Softwood Lumber Products From Canada*, 85 Fed. Reg. 7,273, 7,274 (Dep't Commerce Feb. 7, 2020) (prelim. results and partial rescission of the [CVD] admin. Review; 2017-2018).  For the second administrative review, Commerce declined to review entries of subject merchandise produced and exported by the excluded companies based on their exclusion from the *CVD Order*.  *Initiation of [AD] and [CVD] Admin. Reviews*, 85 Fed. Reg. 13,860, 13,875 nn.7–11 (Dep't Commerce Mar. 10, 2020) ("*Initiation AR2*").  Commerce included all subject companies in the third administrative review, notwithstanding the fact that the excluded companies were not covered by the *CVD Order* at the time of initiation.  *See Initiation of [AD] and [CVD] Admin. Reviews*, 86 Fed. Reg. 12,599 (Dep't Commerce Mar. 4, 2021).  However, the court recognizes that the third administrative review was initiated after Commerce issued the Remand Results.

[42] The Coalition also withdrew its request for the non-excluded companies to be included in the first administrative review.  *See Lumber I*, 393 F. Supp. 3d at 1278–79.  The non-excluded companies were included in the second administrative review of the *CVD Order*, *Initiation AR2*, 85 Fed. Reg. at 13,862–64, as well the third administrative review, as noted above.

[43] This is not a situation in which the statute is silent or ambiguous with respect to Commerce's treatment of entries covered by a CVD expedited review and Commerce gets to fill that "gap" subject to a *Chevron* prong two analysis.  Rather, the court must address Commerce's treatment of entries subject to a determination subsequently

prospective relief given that the Government—not Plaintiff—is the recipient of any duties

ultimately assessed on the subject entries.  *Cf. Lumber I*, 39 F. Supp. 3d at 1278–79

(finding no irreparable harm to Plaintiff from the liquidation of subject entries based, in

part, on the absence of any "direct financial stake in the rate at which entries would be

liquidated" and noting that Plaintiff "is not the recipient of the duties").  The interplay

between the tripartite interests of domestic producers, foreign exporters/producers, and

the U.S. government is a characteristic of trade cases and sets trade cases apart from

other cases addressing the principle of retroactivity in which the proponent of

retroactivity has a direct stake in its application.  *See, e.g.*, *Harper*, 509 U.S. at 91–92

(noting that petitioners sought tax refunds based on the retroactive application of a prior

U.S. Supreme Court opinion that struck down a tax provision discriminating between

retirement benefits paid by the federal government as compared to the state

government and its subdivisions); *Hyde*, 514 U.S. at 751 (noting that the petitioner had

avoided a lawsuit based on retroactive application of a prior Court decision that

rendered the respondent's action untimely).  This distinction, while not dispositive,

further supports prospective relief.

        In sum, the court finds that prospective application of the vacatur of the *Final*

*Results of Expedited Review* is merited.  Accordingly, upon entry of judgment,

Commerce must issue a *Timken*-like Notice rescinding the *Final Results of Expedited*

*Review,* consistent with the requirements set forth in 19 U.S.C. § 1516a(c)(1), reinstate

---

vacated as without statutory authority.  *Chevron* deference is not implicated in the
court's resolution of this issue.

the excluded companies in the *CVD Order* prospectively and, for all companies that were covered by the *Final Results of Expedited Review*, impose a cash deposit requirement based on the all-others rate from the investigation or the company-specific rate determined in the most recently completed administrative review in which the company was reviewed.

The court declines to reach the remaining challenges asserted by the Canadian Parties.  *See* Def.-Ints.' Opp'n Cmts. at 6.  Those issues pertain to the cash deposit rates established by the *Final Results of Expedited Review*.  The results of that expedited review are being vacated and will have no further force or effect.[44]  The cash deposit rates applicable to these companies will be based on the rates determined in the most recently completed administrative review or the investigation.[45]  The court recognizes that this may result in a disparate effect on the excluded and non-excluded companies because the excluded companies remain free from countervailing duties until Commerce's publication of the *Timken* Notice;[46] however, the non-excluded

---

[44] Likewise, the court declines to reach the Coalition's challenges to the substantive aspects of the *Final Results of Expedited Review*, except to the extent indicated below. *See* Pl.'s Mem. at 33–47; *infra note* 46.

[45] To the extent the Canadian Parties assert that the non-excluded companies "would be entitled to" a *de minimis* margin if the court resolved their substantive challenges to Commerce's determination and, thus, exclusion from the *CVD Order*, Def.-Ints.' Opp'n Cmts. at 32, that argument is unpersuasive because the court is vacating the review and ordering the excluded companies to be reinstated in the *CVD Order*.

[46] In its Rule 56.2 Motion, Plaintiff also argued that Commerce violated 19 C.F.R. § 351.214(k)(3)(iii) when it ordered CBP to refund cash deposits paid by the excluded companies because the regulation provides that a determination issued pursuant to subsection (k) "will not be the basis for the assessment of countervailing duties." Pl.'s Mem. at 32.  Subsection (k)(3)(iv) permitted Commerce to exclude from an order a company that obtained a zero or *de minimis* rate.  *See* 19 C.F.R. § 351.214(k)(3)(iv).

companies cannot claim entitlement to the benefit of a correctly calculated CVD rate

based on a review proceeding that is not grounded in the law.

The court has reviewed the Canadian Parties' remaining arguments and finds

that they do not require a different outcome.[47]  Further, the court declines to order

Commerce to conduct a changed circumstances review and adopt the rates calculated

in the *Final Results of Expedited Review*.  *See* Def.-Ints.' Opp'n Cmts. at 32–33.  It is for

the agency to decide, in the first instance, whether a changed circumstances review is

———————————————

Regulations, like statutes, must be read "as a whole."  *Am. Fiber & Finishing, Inc. v. United States*, 39 CIT ___, ___, 121 F. Supp. 3d 1273, 1282–83 & n.33 (2015) (citations omitted).  Thus, taking account of the court's denial of Plaintiff's motion for preliminary injunction, the nature of the prospective relief being provided, and notwithstanding the vacatur of the regulation, Plaintiff's argument lacks merit.

[47] The Canadian Parties' reliance on *Dep't of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020), to support the court's consideration of the subject companies' reliance on Commerce's past conduct of CVD expedited reviews is misplaced.  *See* Def.-Ints.' Opp'n Cmts. at 24 & nn.61–62.  In that case, the U.S. Supreme Court held that the Government's rescission of the Deferred Action for Childhood Arrivals ("DACA") program was arbitrary and capricious because it failed to consider whether there were reliance interests and, if so, whether they were significant, and to weigh any such interests against competing policy interests.  *See Homeland Sec.*, 140 S. Ct. at 1913–15.  *Homeland Security* addresses the requirement that an agency engage in reasoned decision-making that is reviewable by a court pursuant to the "arbitrary and capricious" standard set forth in 5 U.S.C. § 706(2)(A) and explains that a prior illegality finding was limited to one aspect of the program (benefits) and did not consider whether another aspect of the program (forbearance) may have been treated separately.  *See id.* at 1905, 1910-15.  The Court's discussion of the importance of considering reliance interests must therefore be viewed in that context.  *Homeland Security* does not address the circumstances under which an agency may apply prospectively a decision of this court to vacate an agency action.

Additionally, Commerce's conduct of the CVD expedited review was not harmless error.  *See* Def.-Ints.' Opp'n Cmts. at 31–33.  While the APA directs the court to take "due account . . . of the rule of prejudicial error, 5 U.S.C. § 706, an agency action will be "set aside" for "substantial procedural or substantive" errors.  *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394 (Fed. Cir. 1996). The Canadian Parties' offer no authority for the notion that a regulation issued (and a proceeding conducted) *ultra vires* is not a substantial substantive error.

Consol. Court No. 19-00122                                                    Page 48

merited upon receipt of an appropriate request and consistent with the relevant statutory

and regulatory criteria.  Lastly, the Canadian Parties request the court to stay

Commerce's enforcement of its decision.  Def.-Ints.' Reply Cmts. at 12–13.  Such

requests are governed by USCIT Rule 62 and the Canadian Parties may file a motion

for the court's consideration with briefing from all Parties at the appropriate time in

accordance therewith.

**CONCLUSION**

In accordance with the foregoing, Commerce's Remand Results will be

sustained.  Additionally, the court will vacate 19 C.F.R. § 351.214(k) and the *Final

Results of Expedited Review*, with implementation consistent with this opinion.

With respect to the pending Rule 56.2 Motions, consistent with the court's

disposition herein, the court will grant in part Plaintiff's motion with respect to

Commerce's promulgation of 19 C.F.R. § 351.214(k) and deny Plaintiff's remaining

arguments.  The court will further deny as moot the Canadian Parties' respective Rule

56.2 Motions.  Judgment will be entered accordingly.


                                                    /s/      Mark A. Barnett
                                                    Mark A. Barnett, Chief Judge


Dated: August 18, 2021
           New York, New York