IN THE UNITED STATES COURT OF INTERNATIONAL TRADE BEFORE:

<u>HONORABLE MARK A. BARNETT, CHIEF JUDGE</u>

FONTAINE INC.,

    Plaintiff,

        v.

UNITED STATES,

    Defendant.

Ct. No. 19-cv-00154

**MOTION FOR LEAVE TO SEEK TO ENFORCE THE JUDGMENT,**
**MOTION TO ENFORCE JUDGEMENT,**
**AND ALTERNATIVE APPLICATION FOR WRIT OF MANDAMUS**

MARK B. LEHNARDT
Davis & Leiman
1050 Connecticut Ave., N.W., Ste. 1012
Washington D.C., 20036
tel.: (202) 642 4850
email: MLehnardt@DLTrade.com

April 8, 2025

Attorney for Plaintiff

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ........................................................................................................................1

BACKGROUND .......................................................................................................................2

JURISDICTION & STANDARD OF REVIEW ........................................................................5

ARGUMENT ............................................................................................................................6

   I.   This Court Should Not Wait To Enforce Its Judgment....................................................6

   II.   This Court Should Order Commerce To Issue the *Timken Notice* Immediately ...............9

     A.   Section 1516a And The Federal Circuit's Decision In *Timken v. United States* Require That Commerce Issue The *Timken Notice* Immediately...................................................9

     B.   *Timken* And *Diamond Sawblades* Have Not Been Undermined ...................................11

   III.   This Court Can Grant A Writ Of Mandamus....................................................................14

CONCLUSION.........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AL Tech Specialty Steel Corp. v. United States*, 366 F. Supp. 2d 1236, 29 CIT 276 (2005) ...............................................................................................................6

*Almond Bros. Lumber Co. v. United States*, 651 F.3d 1343 (Fed. Cir. 2011) ...........................7

*B.F. Goodrich Co. v. United States*, 18 CIT 35, 36, 843 F. Supp. 713 (1994) ..........................5

*Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988) ...................................................................................................7

*City of Columbus v. Ours Garage & Wrecker Serv.*, Inc., 536 U.S. 424, 122 S. Ct. 2226, 153 L. Ed. 2d 430 (2002) ...............................................................7

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, Slip Op. 2025-8 (Jan. 21, 2025) ...................................................3, 13

*Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 413 F. Supp. 3d 1334 (Ct. Int'l Trade 2019) ..........................5

*Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 66 F.4th 968, 975 (Fed. Cir. 2023) ..........................................4

*Diamond Sawblades Mfrs. Coalition v. United States*, 33 CIT 1422, 650 F. Supp. 2d 1331 (2009) .............................................................................................................4, 9

Diamond Sawblades Mfrs. Coalition v. United States, 626 F.3d 1374 (Fed. Cir. 2010) ...........................................................................................................................4, 12

*Gordon, Feinblatt, Rothman, Hoffberger & Hollander v. Gerhold*, 600 A.2d 1194 (Md. Ct. Special App. 1991) ..............................................................................6

*GPX Int'l Tire Corp. v. United States,* 34 CIT 1307 (2010) ....................................................10

GPX Int'l Tire Corp. v. United States, 587 F. Supp. 2d 1278, 32 Ct. Int'l Trade 1183 (2008) .........................................................................................................10

GPX Int'l Tire Corp. v. United States, 645 F. Supp. 2d 1231, 33 Ct. Int'l Trade 1368 (2009) .........................................................................................................10

*GPX Int'l Tire Corp. v. United States*, 70 F. Supp. 3d 1266 (2015) ...........................................5

GPX Int'l Tire Corp. v. United States, 715 F. Supp. 2d 1337, 34 Ct. Int'l Trade 945 (2010) ...........................................................................................................10

*HCSC-Laundry v. United States*, 450 U.S. 1, 101 S. Ct. 836, 67 L. Ed. 2d 1 (1981)................7

*Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8 (D.C. Cir. 2004) ...........................................5

*In Re Mnfrs. Trading Corp.*, 194 F.2d 948 (6th Cir. 1952) ........................................................6

Iowa Beef Processors v. Bagley, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376.........................6

*Iowa Beef Processors v. Bagley*, 601 F.2d 949 (8th Cir. 1979)...................................................6

*Kerr v. United States Dist. Court for the Northern Dist. Of California*, 426 U.S.
394, 48 L. Ed. 2d 725, 96 S. Ct. 2119 (1976) ...................................................13

*Maier v. Orr*, 754 F.2d 973 (Fed.Cir. 1985) ...........................................................13

*Novosteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002) ............................6

*NTN Bearing Corp. of Am. v. United States*, 26 CIT 949 (2002) .............................6

*NTN Bearing Corp. of Am. v. United States,* 368 F.3d 1369 (Fed. Cir. 2004) ...........6

*Pac. Giant, Inc. v. United States*, 26 CIT 1331 (2002) ...........................................7

*POSCO v. United States*, 335 F. Supp. 3d 1283 (2018) ...................................6, 13

*Sma Surfaces, Inc. v. United States*, 658 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) ...............6, 13

*Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000) ................7

*Timken Co. v. United States*, 13 CIT 238, 714 F. Supp. 535 (1989) ......................8

*Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) .....................4, 8, 13, 14

*United States v. Hanover Ins. Co.*, 82 F.3d 1052 (Fed. Cir. 1996) ..........................5

*Viraj Grp., Ltd. v. United States*, 343 F.3d 1371 (Fed. Cir. 2003) ..........................6

**Statutes**

19 U.S.C. § 1516a(c) ......................................................................................1, 9, 12

19 U.S.C. § 1516a(e) ........................................................................................ passim

28 U.S.C. § 1295(a)(5) .............................................................................................9

28 U.S.C. § 1581(i)(4) ..............................................................................................5

28 U.S.C. § 2645 ......................................................................................................9

**Other Authorities**

7 Moore's *Federal Practice* para. 62.03 (1990) ......................................................5

**Rules**

U.S.C.I.T. R.62(a) ..................................................................................................5, 7

**Administrative Determinations**

*Certain Softwood Lumber Products From Canada: Amended Final Affirmative
Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed.
Reg. 347 (Dep't of Commerce Jan. 3, 2018) .........................................................2

*Certain Softwood Lumber Products From Canada: Final Affirmative
Countervailing Duty Determination, and Final Negative Determination of*

*Critical Circumstances*, 82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 8, 2017)..............................................................................................................................2

*Certain Softwood Lumber Products From Canada: Final Results of Countervailing Duty Expedited Review*, 84 Fed. Reg. 32,121 (Dep't of Commerce July 5, 2019) ...............................................................................................3

*Certain Softwood Lumber Products From Canada: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 82 Fed. Reg. 19,657 (Dep't of Commerce April 28, 2017)..................................................................................2

*Steel Concrete Reinforcing Bar From Mexico: Notice of Court Decision Not in Harmony With the Results of Antidumping Administrative Review; Notice of Amended Final Results*, 90 Fed. Reg. 12,129 (Dep't of Commerce Mar. 14, 2025).........................................................................................................4, 10

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| FONTAINE INC., | |
| Plaintiff, | |
| v. | Ct. No. 19-cv-00154 |
| UNITED STATES, | |
| Defendant. | |

**MOTION FOR LEAVE TO SEEK TO ENFORCE THE JUDGMENT,
MOTION TO ENFORCE JUDGEMENT,
AND ALTERNATIVE APPLICATION FOR WRIT OF MANDAMUS**

Plaintiff Fontaine Inc., hereby submits this motion to enforce the Court's January 21, 2025 opinion and order, and March 13, 2025 judgment, seeking an order from the Court mandating that Commerce issue the *Timken Notice* required by 19 U.S.C. § 1516a(c), because Commerce refuses to publish the *Timken Notice* until after all appeals are exhausted, in contravention of opinions by this Court and the Court of Appeals for the Federal Circuit

**INTRODUCTION**

Fontaine has been paying cash deposits for estimated countervailing (CVD) duty rates for 8 years, since the April 2017 preliminary determination in the CVD investigation. Based upon an unlawful Commerce decision, Fontaine continued paying cash deposits after the July 2019 final results of Fontaine's expedited review. But Fontaine's appeal resulted in Commerce recalculating Fontaine's subsidy rate to *de minimis* in a remand redetermination and stating its intention to exclude Fontaine from the CVD order. This Court affirmed Commerce's unopposed remand redetermination and entered final judgment as to Fontaine on March 13, 2025.

This Court's final judgment triggered Commerce's duty under 19 U.S.C. § 1516a(e) to publish notice of the Court's decision in the Federal Register "within ten days of the date of the

issuance of the court decision." In the *Timken Notice*, Commerce establishes the new cash deposit rate (here, 0.00%) and explains that the final assessment rate will await the conclusive court decision. Although Commerce consistently recognizes its obligation under the statute and court precedent to publish the *Timken Notice* without waiting until after all appeals are exhausted – as it did again less than a month ago – Commerce refuses to publish the *Timken Notice* here.

Fontaine has a clear right to the *Timken Notice*, including the immediate change to a 0.00% cash deposit rate. Commerce has a clear past-due obligation to publish the *Timken Notice*. Fontaine has no adequate remedy other than an order by this Court to enforce the judgment. And after 8 years of paying cash deposits, including the last 6 years based solely upon an unlawful Commerce decision, an order in mandamus or enforcing the judgment is appropriate.

## BACKGROUND

Commerce began collecting cash deposits for estimated countervailing duties with the affirmative preliminary subsidy determination on April 28, 2017. *See Certain Softwood Lumber Products From Canada: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 82 Fed. Reg. 19,657 (Dep't of Commerce April 28, 2017). These duties continued with Commerce's final determination and the CVD order. *See Certain Softwood Lumber Products From Canada: Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances*, 82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 8, 2017); *Certain Softwood*

*Lumber Products From Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 83 Fed. Reg. 347 (Dep't of Commerce Jan. 3, 2018).

Fontaine requested an expedited review, in which Commerce – on the basis of an unlawful decision – calculated an above *de minimis* subsidy rate and continued to require that Fontaine pay cash deposits. *Certain Softwood Lumber Products From Canada: Final Results of Countervailing Duty Expedited Review*, 84 Fed. Reg. 32,121 (Dep't of Commerce July 5, 2019). On appeal in a consolidated case, and after remand, this Court affirmed Commerce's redetermination that Fontaine received a *de minimis* subsidy margin and thus should be excluded from the countervailing duty order. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, Slip Op. 2025-8 (Jan. 21, 2025) ("Coalition") ("Ordered that Commerce's Remand Results are sustained in {as to Fontaine}").

This Court noted that Commerce recognized the finality of its decision and intended to exclude Fontaine from the underlying countervailing duty (CVD) order, instruct Customs and Border Protection (CBP) to stop collecting cash deposits, and to liquidate Fontaine's entries without regard to CVD duties:

> Commerce stated that upon the issuance of "a final conclusive decision from [this court]," the agency intends to instruct U.S. Customs and Border Protection ("CBP") to exclude Fontaine and its cross-owned affiliates from the CVD Order; "to discontinue the suspension of liquidation and the collection of cash deposits of estimated countervailing duties on all shipments of softwood lumber produced and exported by Fontaine" during the period of review; and "to liquidate, without regard to countervailing duties, all suspended entries of shipments of softwood lumber produced and exported by Fontaine, and to refund all cash deposits of

> estimated countervailing duties collected on all such shipments."
> Remand Results at 22.

*Coalition*, Slip Op. 25-8 at 19 n.23.

Because this Court remanded, in part, for Commerce to reconsider issues related to other parties, Fontaine filed a motion both to sever its case from the consolidated case, and for entry of judgment. *See Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, Ct. No. 19-122, ECF 301, *Unopposed Motion to Sever and for Judgment*. Fontaine explained in its motion, "{t}he intent of this motion is to stop the requirement that Fontaine pay countervailing duty (CVD) deposits," and noted that "{o}n March 3, 2025, counsel for Defendant, the United States, Stephen Tosini, consented to this motion." *Id.* This Court severed Fontaine's action from the rest of the consolidated case and issued its final judgment on March 13, 2025. In the judgment, this Court stated: "ORDERED that the subject entries enjoined in this action (ECF No. 11) must be liquidated in accordance with the final court decision, including all appeals, consistent with the requirements in section 516A(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(e) (2018)."

Just under a month ago, Commerce affirmed that it accepts this interpretation of section 1516a(e), explaining in a *Timken Notice*:

> In its decision in Timken,[8] as clarified by Diamond Sawblades,[9] the U.S. Court of Appeals for the Federal Circuit held that, pursuant to sections 516A(c) and (e) of the Act, Commerce must publish a notice of court decision that is not "in harmony" with a Commerce determination and must suspend liquidation of entries pending a "conclusive" court decision. The CIT's February 28, 2025, judgment constitutes a final decision of the CIT that is not in harmony with Commerce's Final Results. Thus, this notice is published in fulfillment of the publication requirements of Timken.

*See, e.g.*, *Steel Concrete Reinforcing Bar From Mexico: Notice of Court Decision Not in Harmony With the Results of Antidumping Administrative Review; Notice of Amended Final*

*Results*, 90 Fed. Reg. 12,129 (Dep't of Commerce Mar. 14, 2025) (*citing Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990); *Diamond Sawblades Mfrs. Coalition v. United States*, 33 CIT 1422, 1434-1437, 650 F. Supp. 2d 1331, 1342-1344 (2009) ("*Diamond Sawblades I*"), *aff'd* 626 F.3d 1374 (Fed. Cir. 2010) ("*Diamond Sawblades II*")

## JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction in this case under 28 U.S.C. § 1581(i).  *See Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 66 F.4th 968, 975 (Fed. Cir. 2023) ("the Trade Court considered the government's motion to dismiss for lack of jurisdiction and concluded that it had jurisdiction under the residual jurisdictional grant made in 28 U.S.C. § 1581(i)(4)" (*citing Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 413 F. Supp. 3d 1334, 1341, 1343-47, (Ct. Int'l Trade 2019)). The court has inherent authority to enforce its own judgments. *See B.F. Goodrich Co. v. United States*, 18 CIT 35, 36, 843 F. Supp. 713, 714 (1994), including the "power to determine the effect of its judgments and issue injunctions to protect against attempts to attack or evade those judgments." *United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1054 (Fed. Cir. 1996).

The Court of International Trade grants motions to enforce a judgment "when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment." *GPX Int'l*

*Tire Corp. v. United States*, 70 F. Supp. 3d 1266, 1272 (2015) (*quoting Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.C. Cir. 2004)).

## ARGUMENT

Commerce refuses to comply with its clear duty to publish the section 1516a(e) notice. This Court should order Commerce – either as an enforcement of its judgment or as a writ of mandamus – to publish the *Timken Notice* immediately.

### I.    This Court Should Grant Leave To Seek Enforcement Of The Judgment Without Waiting 30 Days

This Court should not wait to enforce its judgment because of the amount of time in which Fontaine has been required to pay cash deposits based upon an unlawful decision, and the clearness of the requirement to publish the *Timken Notice*.  U.S.C.I.T. Rule 62(a) prevents parties from seeking to enforce a judgment for 30 days after entry of the judgment, "unless the court orders otherwise."  This rule is intended to allow parties to file post-judgment motions.  *See* 7 Moore's *Federal Practice* para. 62.03 (1990) ("Rule 62(a) gives party time to prepare for appeal or determine what other method of review should be taken").  The rule, however, "does not apply where no appeal lay."  *See Gordon, Feinblatt, Rothman, Hoffberger & Hollander v. Gerhold*, 600 A.2d 1194, 1198-1200 (Md. Ct. Special App. 1991) (*citing Iowa Beef Processors v. Bagley*, 601 F.2d 949, 955 (8th Cir. 1979), *cert. denied*, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376; *In Re Mnfrs. Trading Corp.*, 194 F.2d 948 (6th Cir. 1952)).

Here, no party opposed the remand redetermination that this court affirmed, and Commerce did not issue the remand redetermination "under protest."  Commerce's recalculation of Fontaine's benefits was conducted after Commerce agreed, "based on the unique facts of this record, that Fontaine was required to pay, and did pay, its final tax liabilities for FY 2015 by the end of the 2015 calendar year."  ECF 255, *Final Remand* at 12.  At no point in the *Final Remand*

did Commerce indicate that its decisions regarding Fontaine were being made "under protest."

The Federal Circuit has held that Commerce is in the position of a non-prevailing party when it

makes a decision "under protest." *Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed.

Cir. 2003).

Further, although the Coalition raised arguments in comments before Commerce

regarding Fontaine, *see* ECF 255, *Final Remand*, at 19-21, the Coalition abandoned those

arguments by not raising them in its comments before this Court.  *See* ECF 258, *Plaintiff's*

*Comments on Final Results Of Redetermination To Court Remand*.  Arguments not raised before

both the agency and this Court on remand are waived.  "{I}t is black letter law that—to properly

preserve an issue for appeal—a party generally must first exhaust its remedies by making its

argument before the agency, then brief that argument before the trial court. Arguments that are

not properly preserved are waived." *AL Tech Specialty Steel Corp. v. United States*, 366 F. Supp.

2d 1236, 29 CIT 276, 285 (2005) (*citing Novosteel SA v. United States*, 284 F.3d 1261, 1273-74

(Fed. Cir. 2002)). Further, "{e}ven if an argument has been raised to the agency, the failure to

raise that argument before the court on remand generally constitutes waiver." *Sma Surfaces, Inc.*

*v. United States*, 658 F. Supp. 3d 1325, 1329 (Ct. Int'l Trade 2023) (*citing POSCO v. United*

*States*, 335 F. Supp. 3d 1283, 1287 (2018)); *NTN Bearing Corp. of Am. v. United States*, 26 CIT

949, 950 n.1 (2002), *aff'd*, 368 F.3d 1369 (Fed. Cir. 2004); *Pac. Giant, Inc. v. United States*, 26 CIT 1331, 1332 n.1 (2002)).

Because there is no possibility of appeal, "no appeal lay{s}" in this completed action. With no possibility of appeal, there is no need to leave time for parties to file post-judgment motions.

Further, section 1516a(e), which requires publication of notice of the court decision, and triggers the requirement to publish the *Timken Notice*, is a more specific statute than U.S.C.I.T. Rule 62, and thus prevails. The Federal Rules of Civil Procedure are "as binding as any federal statute." *Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000) ("the Federal Rules of Civil Procedure, like the Federal Rules of Criminal procedure, are 'as binding as any federal statute'" (*quoting Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988)). But even if this Court's rules are on parallel with statutes, it is a "well settled principle that a specific statute controls over a general provision." *Almond Bros. Lumber Co. v. United States*, 651 F.3d 1343, 1354 (Fed. Cir. 2011) (*citing City of Columbus v. Ours Garage & Wrecker Serv*., Inc., 536 U.S. 424, 445, 122 S. Ct. 2226, 153 L. Ed. 2d 430 (2002); *HCSC-Laundry v. United States*, 450 U.S. 1, 6, 101 S. Ct. 836, 67 L. Ed. 2d 1 (1981)).

Here, Rule 62(a) of the Rules of the Court of International Trade places a stay on all "proceedings to enforce" a judgment of the court. The rule, however, applies regardless of what type of action has been decided by the Court, identifies two specific exceptions, and sets forth a general exception, "unless the court orders otherwise." U.S.C.I.T. Rule 62(a). In contrast, section 1516a(e) applies only to appeals from final determinations by the International Trade Commission and Department of Commerce in antidumping and countervailing duty proceedings,

and specifically requires publication of the *Timken Notice*, "within ten days from the date of the issuance of the court decision."  19 U.S.C. § 1516a(e).  As the more specific statute, the requirement to publish notice of the Court decision within ten days prevails over the Court's rule staying proceedings to enforce the Court's opinion.

Accordingly, this Court should not wait to order enforcement of its judgment.

## II.    This Court Should Order Commerce To Issue the *Timken Notice* Immediately

This Court should order Commerce to issue the *Timken Notice* immediately. This Court's March 13, 2025 final judgment triggered Commerce's duty under 19 U.S.C. § 1516a(e) to publish notice of the Court's decision in the Federal Register "within ten days of the date of the issuance of the court decision."

### A.  Section 1516a And The Federal Circuit's Decision In *Timken v. United States* Require That Commerce Issue The *Timken Notice* Immediately

The duty to publish a *Timken Notice* attaches to a final decision of this Court.  The name, "*Timken Notice*," comes from the Federal Circuit case interpreting the notice requirement of 19 U.S.C. § 1516a(e).  *See Timken*, 893 F.2d 337.  There, Commerce on remand recalculated the rate of a party, CMEC, and this Court affirmed, entering its final judgment on March 22, 1989. *Id.*  In that case, 35 years ago, "Commerce {was} of the opinion that a decision of the CIT is not final for the purposes of publication of notice until either (1) an appeal is decided by {the Federal Circuit}, or (2) the time for appeal expires.  Therefore, Commerce did not publish notice of the CIT decision within 10 days of March 22, 1989." *Id.*

Because Commerce refused to publish the notice, Timken filed an application for writ of mandamus to compel Commerce to publish the notice.  *Id.*  Meanwhile, CMEC appealed the decision to the Federal Circuit.  *Id.* at 338-39.  The CIT granted Timken's application for mandamus, finding that section 1516a(e) "created a clear obligation on the part of Commerce to

publish the CIT decision within 10 days of issuance…regardless of whether an appeal is taken or the time for appeal has run.  *Id.* at 339 (*citing Timken Co. v. United States*, 13 CIT 238, 714 F. Supp. 535 (1989)).

On appeal, the Federal Circuit determined that section 1516a(e) does not require immediate liquidation of relevant entries: "§ 1516a(e) does not require liquidation in accordance with an appealed CIT decision, since that section requires that liquidation take place in accordance with the final court decision in the action."  *Id.* at 340.  But the Federal Circuit concluded that section 1516a(e) requires publication of the notice – and notice of the revised cash deposit rate – upon publication of this court's decision:

> Unless the agency is required to publish notice of a CIT decision not in harmony within 10 days of the issuance of the decision (regardless of the time for appeal or of whether an appeal is taken), § 1516a(c)(1) would require that the agency's determination continue to govern entries even after the CIT's decision. However, the House Committee report, in discussing § 1516 (a), states that the agency's determination will govern only that merchandise which is "entered prior to the first decision of a court which is adverse" to that determination. H.R.Rep. No. 317, 96th Cong., 1st Sess. 182 (1979) (emphasis added). In this case, the CIT has rendered the "first decision of a court" which is adverse to the agency's determination. Thus, publication is required to terminate liquidation in accordance with the agency's determination. 7

*Id.*  The Federal Circuit further stated that the position that Commerce took then, and that it takes again now, "is nonsensical" and not "credible."  *Id.* ("It is nonsensical to say that a court decision issues only when the time for appeal expires; a decision issues when judgment is entered. Nor do we find it credible to say that a CIT decision does not exist until the time for appeal expires; such an interpretation is contrary to both the common meaning of the term and its use in statutes such as 28 U.S.C. § 1295(a)(5) and 28 U.S.C. § 2645.").

Thus, the Federal Circuit held that "If the CIT (or this court) renders a decision which is not in harmony with Commerce's determination, then Commerce must publish notice of the

decision within ten days of issuance (i.e., entry of judgment), regardless of the time for appeal or of whether an appeal is taken." *Id.* at 341.  Further, Commerce must implement the rate affirmed by the court: "it is necessary to suspend liquidation until there is a conclusive decision in the action." *Id.*  Accordingly, the Federal Circuit affirmed this Court's grant of the application for mandamus.  *Id.*, at 342 ("The court below held that Commerce was obligated to publish notice of the March 22, 1989 CIT decision by April 1, 1989. We agree with the holding, and affirm.").  Nearly 20 years later, this Court reiterated the holding in *Timken*.  *See Diamond Sawblades I*, 33 CIT at 1434-1437, 650 F. Supp. 2d at 1342-1344.  Thus, the *Timken Notice* here must implement the new cash deposit rate (here, 0.00%) and explain that the final assessment rate will await the conclusive court decision.

 To Fontaine's knowledge, Commerce has consistently recognized its obligation under the statute and court precedent to publish the *Timken Notice* without waiting until after all appeals are exhausted.  Commerce followed *Timken* and *Diamond Sawblades* less than a month ago when publishing the section 1516a notice after in appeal regarding rebar from Mexico.  *See Rebar from Mexico*, 90 Fed. Reg. 12,129.  There, Commerce issued the *Timken Notice* on March 10, 2025, 10 days after this Court issued its final, appealable judgment on February 28, 2025, and the notice published in the Federal Register shortly thereafter, on March 14, 2025.  *See id.* Here, Commerce refuses to publish the *Timken Notice*.

### B. *Timken* And *Diamond Sawblades* Have Not Been Undermined

 Commerce may point to *GPX Int'l Tire Corp. v. United States,* 34 CIT 1307 (2010), which may identify a narrow exception to the 1516a(e) requirement to publish the notice of court

decision not in harmony within 10 days of the CIT judgment, but even if that exception exists, it very clearly does not apply here.

*GPX* was the case challenging the application of CVD law to China. *Id.* (*citing* GPX Int'l Tire Corp. v. United States, 587 F. Supp. 2d 1278, 32 Ct. Int'l Trade 1183 (2008); GPX Int'l Tire Corp. v. United States, 645 F. Supp. 2d 1231, 33 Ct. Int'l Trade 1368 (2009); GPX Int'l Tire Corp. v. United States, 715 F. Supp. 2d 1337, 34 Ct. Int'l Trade 945 (2010). In that case, Judge Restani found against the United States, holding that U.S. law does not allow Commerce to apply CVD law to a non-market-economy country. *Id.* The Court stated that judgment would issue sustaining Commerce's remand redetermination complying with the Court's decision. *Id.* This decision preventing the application of CVD law to China was significant, and "the government … made it clear that it {would} appeal the court's decision." *Id.*, 34 Ct. Int'l Trade at 1308. Two prevailing plaintiffs filed a motion to compel the United States not to require deposits for its exports. *Id.* Although those plaintiffs had filed an earlier motion, which J.Restani had denied, they refiled the motion citing the then recently-issued *Diamond Sawblades* (which had been appealed) as support for the requirement to issue the *Timken Notice* and adjust the cash deposit requirement. *Id.* Judge Restani states:

> Underlying the decision {in *Diamond Sawblades*}, however, is the conclusion that a final judgment of this court sustaining an agency remand determination results in the replacement of an original determination found erroneous. In this case that would mean that there is no underlying determination supporting the CVD order as to plaintiffs and cash deposits may not be collected. That may be the proper interpretation of the statute. Nonetheless, *Diamond Sawblades* has been appealed. The court sees no purpose in extensive discussion of the statutory interpretation issue presented there, given the facts of the case before it now.

*Id.* Thus, Judge Restani's opinion was based, in part, on the fact that the procedural law regarding *Timken Notices* addressed in *Diamond Sawblades* had been appealed, and the Federal

Circuit had not yet opined on the issue.  *Id.*  Judge Restani then explained the four-part narrow factual circumstances where - in her view - it was possible that Commerce may not be required to issue a *Timken Notice*:

> here the government has made it clear that it will appeal the court's decision and the court interprets its opposition to plaintiffs' request as an alternate preemptive request for stay pending appeal, just as plaintiffs' request to direct Commerce not to collect duty deposits presupposes the action the government will take or not take as a result of this judgment.  *Given the unsettled state of the law with respect to this procedural issue, as well as the unsettled state of the law governing the substance of this action*, the court would grant a request by the government to *stay pending appeal such portion of the requested judgment that would require the cessation of the collection of duties*.

*Id.* (Emphasis added.).  Thus, there are four parts to the narrow exception she announced:  (1) unsettled procedural law about *Timken Notices*, (2) unsettled substantive law underlying the case before the CIT, (3) the non-prevailing party appealing the CIT decision, and (4) a motion to stay judgment pending appeal.  *Id.*  Judge Restani then treated the U.S. opposition to the motion by plaintiffs as a motion to stay the judgment pending appeal (even though a specific motion that had not been filed by the US), and effectively granted the request to stay parts of her previous decision that would trigger the *Timken Notice* requirement.  *Id.*

The narrow exception Restani announced in *GPX* does not have any application under the circumstances of this case, if the case can even be cited as good law.  First, Judge Restani issued her opinion in *GPX* on October 1, 2010, citing the unsettled procedural law because *Diamond Sawblades* had been appealed.  But just over 2 months later, on December 9, 2010, the Federal Circuit affirmed *Diamond Sawblades*, (*see Diamond Sawblades II*, 626 F.3d 1374).  The Federal Circuit affirmed on other grounds, but cited 1516a language approvingly, noting that the government argument that "'it was clear error for the Trade Court to conclude that Commerce's publication of the *Timken* notice required Commerce to publish antidumping duty

orders and collect cash deposits in accordance with a decision of the Trade Court that is pending

appeal and is neither final nor conclusive.  That argument conflates the statutory obligation to

publish notice of a court decision that is 'not in harmony' with the agency's decision under

review, 19 U.S.C. § 1516a(c)—an obligation that results in suspension of liquidation....  *Section*

*1516a(c) applies when a court issues a decision that is contrary to the pertinent agency's prior*

*determination*."  *Id.* at 626 F.3d. 13

Second, in this case, the substantive law is not unsettled because Commerce did not

reach its decision on remand "under protest."  *Viraj*, 343 F.3d at 1376.  Third, Commerce has not

indicated any intention of appealing the decision.  And even if Commerce wanted to appeal, the

appeal would be short lived because Commerce did not issue the remand under protest.  *Id.*

Finally, there has been no filing with this court that can be interpreted as a motion to stay the

judgment pending appeal.  Nor could there be because Commerce did not issue the remand under

protest and no party objected to the remand redetermination.  *Id.*; *Sma Surfaces*, 658 F. Supp. 3d

at 1329 ("failure to raise that argument before the court on remand generally constitutes waiver")

(citations omitted).  Any party that traditionally might appeal is procedurally foreclosed from

appealing.  Thus, even if the exception Restani announced is good law, the circumstances

of *Fontaine* do not qualify under the four-part narrow exception announced by Judge Restani.

### III.    This Court Can Grant A Writ Of Mandamus

*Timken* was a mandamus case.  *Timken*, 893 F.2d at 338-39. Timken filed an application

or writ of mandamus, which this Court granted and the Federal Circuit affirmed.  *Id.*, 893 F.2d at

342.  Thus, under the nearly identical facts here, this Court properly may grant Fontaine's

alternative application for writ of mandamus.

For a writ of mandamus, the moving party must demonstrate "(1) a clear duty on the part

of the defendant to perform the act in question; (2) a clear right on the part of the plaintiff to

demand the relief sought; and (3) an absence of an adequate alternative remedy. *Timken*, 893

F.2d at 339 (*citing Maier v. Orr*, 754 F.2d 973, 983 (Fed.Cir. 1985); *Kerr v. United States Dist.*

*Court for the Northern Dist. Of California*, 426 U.S. 394, 402-03, 48 L. Ed. 2d 725, 96 S. Ct.

2119 (1976)).  In *Timken*, under circumstances where this Court affirmed a different result upon

remand than Commerce's initial determination and issued its final judgment, the Federal Circuit

found that Commerce had a clear duty to issue the notice, that Timken had a clear right to

demand the relief sought, and there was no adequate alternative remedy.  *Id.* at 339-42.

 Here, this Court affirmed a different result for Fontaine – *de minimis* margins that lead to

exclusion from the CVD order – than Commerce's initial determination of slightly-above *de*

*minimis* margins.  *See Coalition*, Slip Op. 25-8 at 19-21.  This Court then entered its final

judgment for Fontaine on March 13, 2025.  *See Fontaine*, Ct. No. 19-154, ECF 47, *Order*.  Thus,

under 19 U.S.C. § 1516a(e), *Timken*, and *Diamond Sawblades*, Commerce has the clear duty to

publish the *Timken* notice within 10 days of March 13, 2025 – that is, by March 23, 2025 –

setting Fontaine's cash deposit rate at 0.00%.  *Timken*, 893 F.2d at 339-42.  Further, because

Commerce's new determination calculated *de minimis* subsidies for Fontaine and correctly stated

an intent to exclude Fontaine from the order, *see Coalition*, Slip Op. 25-8 at 21 & n.23, Fontaine

has a clear right to demand the relief sought.  Finally, because there is no other way for Fontaine

to obtain a ruling that its cash deposit rate should be 0.00%, just as in *Timken*, there is an absence

of adequate alternative remedy.

 Finally, the equities weigh strongly in favor of this Court ordering Commerce

immediately to issue the *Timken Notice*.  Fontaine has been paying cash deposits for estimated

countervailing (CVD) duty rates for 8 years, since the April 2017 preliminary determination in

the CVD investigation.  Were it not for an unlawful Commerce decision, Fontaine would have

stopped paying cash deposits after the July 2019 final results of Fontaine's expedited review. Because of the unlawful decision, Fontaine has been paying cash deposits for estimated CVD duties for 6 years beyond what it should have been required. The relief Fontaine seeks here is beyond fair, and Commerce's recalcitrance in the face of clear statutory and jurisprudential guidance remove any question that Commerce must act immediately.

## CONCLUSION

For these reasons, we respectfully request that the Court enforce its March 13, 2025 judgement by ordering Commerce to issue the *Timken Notice* immediately, setting Fontaine's cash deposit rate at 0.00%, reiterating Commerce's intent to exclude Fontaine from the CVD order and to direct CBP to refund Fontaine's CVD cash deposits without regard to CVD duties.[1]

Respectfully submitted,

/s/ Mark B. Lehnardt

Davis & Leiman, PLLC
1050 Connecticut Ave., N.W., Ste. 1012
Washington D.C., 20036
tel.: (202) 642 4850
email: MLehnardt@DLTrade.com

Date: April 8, 2025                    *Attorney for Fontaine Inc.*

---

[1] Fontaine reiterates the statement in its Motion to Sever and For Judgment that its action here is "without prejudice to a post-judgment motion regarding refunds prior to liquidation paid by U.S. Customs and Border Protection pursuant to 19 U.S.C. § 1520(a)(4)."