## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| _____ | ) | |
| FONTAINE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Ct. No. 19-00154 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR RELIEF FROM FINAL JUDGMENT

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

Of Counsel

JESUS SAENZ
Senior Attorney
U.S. Department of Commerce
Office of the Chief Counsel
  for Trade Enforcement and Compliance
Washington, D.C. 20230


Dated: January 28, 2026

SOSUN BAE
Senior Trial Counsel
Department of Justice
Civil Division, Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 305-7568
Sosun.Bae@usdoj.gov

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

BACKGROUND ................................................................................................................... 2

ARGUMENT ....................................................................................................................... 4

    I.     Standard of Review.................................................................................... 4

    II.    The Equities Do Not Favor Pre-Liquidation Refunds Under Rule 60(b)(5) .......... 5

    III.   Fontaine Is Not Entitled to Relief Under Rule 60(b)(6) ...................................... 11

CONCLUSION.................................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Borusan Mannesmann Boru Sanayi v. Ticaret v. United States*,
    568 F. Supp. 3d 1333 (Ct. Int'l Trade 2022)................................................................... 6

*CEATS, Inc. v. Continental Airlines, Inc.*,
    755 F.3d 1356 (Fed. Cir. 2014)............................................................................ 5, 11

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
    66 F.4th 968 (Fed. Cir. 2023)................................................................................ 3

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
    483 F. Supp. 3d 1253 (Ct. Int'l Trade 2020)............................................................ 2

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
    701 F. Supp. 3d 1334 (Ct. Int'l Trade 2024)............................................................ 3

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
    755 F. Supp. 3d 1317 (Ct. Int'l Trade 2025)............................................................ 3

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v United States*,
    665 F. Supp. 3d 1347 (Ct. Int'l Trade 2023)............................................................ 5

*Fiskars, Inc. v. Hunt Mfg. Co.*,
    279 F.3d 1378 (Fed. Cir. 2002)............................................................................ 5

*Horne v. Flores*,
    557 U.S. 433 (2009)............................................................................... 4, 5, 7

*Invenergy Renewables LLC v. United States*,
    450 F. Supp. 3d 1347 (Ct. Int'l Trade 2020)............................................................ 6

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988)..................................................................................... 5

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992)..................................................................................... 5

*Sampson v. Murray*,
    415 U.S. 61 (1974)................................................................................... 7, 8

*Shanghai Tainai Bearing Co. v. United States*,
    582 F. Supp. 3d 1299 (Ct. Int'l Trade 2022)............................................................ 7

*Sprint Commc'ns Co. v. CAT Commc'ns Int'l Inc.*,
  335 F.3d 235 (3d Cir. 2003) ........................................................................................ 6

**Statutes**

6 U.S.C. § 211 ................................................................................................................ 10
19 U.S.C. § 1504(d) ....................................................................................................... 10
19 U.S.C. § 1516a(c)(1) ................................................................................................... 2
19 U.S.C. § 1520(a) ......................................................................................................... 5
19 U.S.C. § 1520(a)(4) ..................................................................................................... 6

**Regulations**

19 C.F.R. § 24.36(a)(1)(ii) ............................................................................................... 9
19 C.F.R. § 351.214(k) ..................................................................................................... 2

**Administrative Determination**

*Certain Softwood Lumber Products from Canada,*
  83 Fed. Reg. 347 (Jan. 3, 2018) ................................................................................... *2*

*Certain Softwood Lumber Products from Canada*,
  84 Fed. Reg. 32,121 (Jul. 5, 2019) ............................................................................... 2

*Certain Softwood Lumber Products from Canada: Notice of Court Decision Not in Harmony*
*With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final*
*Results of Expedited Review; Notice of Amended Cash Deposit Rates,*
  86 Fed. Reg. 48,396 (Dep't of Commerce Aug. 30, 2021) ........................................... 2

*Certain Softwood Lumber Products From Canada: Notice of Amended Final Results of*
*Countervailing Duty Expedited Review; Notice of Exclusion From Countervailing Duty Order*,
  90 Fed. Reg. 18,957 (Dep't of Commerce May 5, 2025) ............................................. 4

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                       )
FONTAINE, INC.,                        )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )  Ct. No. 19-00154
                                       )
UNITED STATES,                         )
                                       )
        Defendant.                     )
_____)

## ORDER

On consideration of plaintiff's motion for relief from final judgment, defendant's

response, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is denied.

Dated: _____                        _____
       New York, NY                                    CHIEF JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                                     )
FONTAINE INC.,                                       )
                                                     )
        Plaintiff,                                   )
                                                     )
        v.                                           )  Ct. No. 19-00154
                                                     )
UNITED STATES,                                       )
                                                     )
        Defendant.                                   )
_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR RELIEF FROM FINAL JUDGMENT**

Defendant, the United States, respectfully submits this response in opposition to plaintiff

Fontaine Inc.'s (Fontaine) motion for relief from final judgment.  Fontaine Mot. for Relief, ECF

No. 53.  Despite the Court having already denied a similar motion requesting an order for U.S.

Customs and Border Protection (CBP) to issue pre-liquidation refunds of cash deposits paid on

subject entries in the related case *Comm. Overseeing Action for Lumber Int'l Trade*

*Investigations or Negots. v. United States*, No. 19-00122 (Ct. Int'l Trade) (*Coalition*), ECF No.

306 (Coalition Refund Order), Fontaine seeks the same relief here.  But Fontaine provides no

compelling reason for the Court to decide differently than in the Coalition Refund Order.  If

anything, the particular circumstances of this case guide even more strongly against depriving

CBP of its discretion as to whether to issue pre-liquidation refunds and forcing it to engage in an

extremely onerous administrative process.  Accordingly, the Court should deny Fontaine's

motion, just as it did the motion in the *Coalition* case.

**BACKGROUND**

In 2018, the U.S. Department of Commerce published a countervailing duty order covering certain softwood lumber products from Canada. *Certain Softwood Lumber Products from Canada,* 83 Fed. Reg. 347 (Jan. 3, 2018) (amended affirm. CVD determ. and order). In response to certain Canadian producers' and exporters' requests, Commerce initiated an expedited review under 19 C.F.R. § 351.214(k). *Certain Softwood Lumber Products from Canada,* 84 Fed. Reg. 32,121 (Jul. 5, 2019) (final results of expedited review) (final results). As a result of the expedited review, Commerce calculated an above *de minimis* countervailing duty rate for Fontaine. *Id*.

The Committee Overseeing Action for Lumber International Trade Investigations challenged Commerce's authority to promulgate its expedited review regulations, while several companies under expedited review (including Fontaine), the Government of Canada, and the Government of Quebec challenged various other aspects of Commerce's final results. *Coalition* Remand Results, ECF No. 309-1 at 2. After the cases were consolidated, the Court held that Commerce had exceeded its rulemaking authority by promulgating the expedited review regulations. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 483 F. Supp. 3d 1253, 1267 (Ct. Int'l Trade 2020). The Court ordered Commerce to "issue a Timken-like notice . . . consistent with the requirements set forth in 19 U.S.C. § 1516a(c)(1){.}" *Coalition*, ECF No. 194. Commerce issued such a notice in the Federal Register on August 30, 2021. *Certain Softwood Lumber Products from Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates*, 86 Fed. Reg. 48,396 (Dep't of Commerce Aug. 30, 2021).

The Court of Appeals for the Federal Circuit reversed this Court's judgment, holding that Commerce had statutory authority to conduct expedited reviews, and remanded to this Court for further proceedings. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 977-979 (Fed. Cir. 2023). This Court then remanded for Commerce to reassess Fontaine's countervailing duty rate, holding that Commerce had not sufficiently explained why it relied on Fontaine's fiscal year 2014 tax returns and rejected the fiscal year 2015 returns. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 701 F. Supp. 3d 1334, 1362 (Ct. Int'l Trade 2024). On remand, Fontaine obtained a *de minimis* countervailing duty rate, which the Court sustained. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 755 F. Supp. 3d 1317, 1328 (Ct. Int'l Trade 2025).

During the pendency of the remand proceedings, the Quebec respondents filed a motion seeking pre-liquidation refunds of entries that were under continuing suspension of liquidation pursuant to judicial and administrative proceedings associated with the parallel antidumping duty order. Coalition Refund Order at 7. The Court denied the motion, holding that Rule 60(a) did not provide a basis for relief and that the balance of the equities did not favor relief under Rule 60(b)(5). *Id.* at 12, 14. The Court explained that any harm arising from the retention of cash deposits pending liquidation did not outweigh the administrative burden CBP would incur by having to manually process 13,000 subject entries, and observed that "[t]he interest on any excess cash deposits paid will continue to accrue until liquidation, providing the statutorily provided offset to any harm arising from the unavailability of the funds until that time." *Id.* at 15.

On March 10, 2025, Fontaine filed an unopposed motion to sever, which the Court granted. *Coalition*, ECF Nos. 301, 303. The Court entered judgment on March 13, 2025. ECF No. 47. Following judgment, Fontaine filed a motion to enforce judgment and petition for a writ of mandamus, asking the Court to order Commerce to issue a Federal Register notice setting Fontaine's cash deposit rate to zero percent and stating the intent to exclude Fontaine from the countervailing duty order. ECF No. 49. The Court granted the motion to the extent that it ordered Commerce to publish notice of the amended final results of the expedited review with respect to Fontaine that reflects the zero percent cash deposit rate determined on remand. ECF No. 52 at 5-6. Commerce did so, noting that it was "issuing these amended final results of {the} CVD expedited review reflecting the zero percent cash deposit rate determined in Commerce's remand redetermination." *Certain Softwood Lumber Products From Canada: Notice of Amended Final Results of Countervailing Duty Expedited Review; Notice of Exclusion From Countervailing Duty Order*, 90 Fed. Reg. 18,957 (Dep't of Commerce May 5, 2025).

Subsequently, Fontaine filed the motion under review, requesting that the Court order Commerce to authorize CBP to provide pre-liquidation refunds and instruct CBP to provide those pre-liquidation refunds. *See generally* Fontaine Mot. for Relief.

## ARGUMENT

### I.    Standard of Review

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting Fed. R. Civ. P. 60(b)(5)) (bracketing by Court). "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a

court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Id*. (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Id*. (internal citations and quotation marks omitted).

Rule 60(b)(6) allows courts to relieve a party from final judgment for "any other reason that justifies relief" aside from the reasons enumerated in Rule 60(b)(1)-(5). *See, e.g., CEATS, Inc. v. Continental Airlines, Inc.*, 755 F.3d 1356, 1361 (Fed. Cir. 2014); *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v United States*, 665 F. Supp. 3d 1347, 1355 n.7 (Ct. Int'l Trade 2023). Relief is available under Rule 60(b)(6) "only when the basis for relief does not fall within any of the other subsections of Rule 60(b)." *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002). A movant is only entitled to relief under Rule 60(b)(6) if "such action is appropriate to accomplish justice" and only in "extraordinary circumstances." *CEATS*, 755 F.3d at 1361 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 963-64 (1988).

## II.    The Equities Do Not Favor Pre-Liquidation Refunds Under Rule 60(b)(5)

Fontaine cannot establish entitlement to pre-liquidation refunds pursuant to Rule 60(b)(5) because it can neither identify a significant change in fact or law warranting relief from judgment nor show that the equities favor the granting of such relief.

As an initial matter, Fontaine asks the Court "to instruct CBP that it is authorized to issue pre-liquidation refunds to Fontaine under 19 U.S.C. § 1520(a)." Fontaine Mot. for Relief at 10. But we have never claimed that CBP lacks the authority to issue pre-liquidation refunds; rather,

as we stated in our response to the Quebec respondents' Rule 60 motion, CBP is permitted under section 1520(a)(4) to refund duties before liquidation in some circumstances, but it is under no requirement to do so.  *Coalition*, ECF No. 277 at 10 (citing *Borusan Mannesmann Boru Sanayi v. Ticaret v. United States*, 568 F. Supp. 3d 1333, 1342 (Ct. Int'l Trade 2022), *appeal dismissed*, No. 2022-2097, 2022 WL 17975024 (Fed. Cir. Dec. 28, 2022) ("{Section} 1520(a)(4) provides Customs with the authority to issue pre-liquidation refunds, but the agency is not required to do so.")).  This Court agreed, stating that while CBP may have granted requests for pre-liquidation refunds in the past, "neither now, nor then, was CBP required to make such pre-liquidation refunds."  Coalition Refund Order at 13.

Fontaine now asks this Court to limit CBP's well-established discretion under section 1520(a)(4) and impose a requirement that has no basis in the statutory framework.  But Fontaine cannot meet the "dual burden of showing changed circumstances *and* inequity" sufficient to justify relief under Rule 60(b)(5).  *Invenergy Renewables LLC v. United States*, 450 F. Supp. 3d 1347, 1361-62 (Ct. Int'l Trade 2020) (quoting *Sprint Commc'ns Co. v. CAT Commc'ns Int'l Inc.*, 335 F.3d 235, 242 (3d Cir. 2003)) (emphasis added).

Fontaine claims that "there is a significant change from the circumstances of the {Quebec respondents}" to whom the Court already denied relief.  Fontaine Mot. for Relief at 10.  But the only difference Fontaine identifies is that the amount of interest that it calculates the Government will have to pay Fontaine is higher than the interest for the Quebec respondents' entries, and the "quantifiable cost of waiting to refund Fontaine's deposits is significantly higher than the quantifiable cost of providing pre-liquidation refunds now."  *Id.* at 2, 11-12.  But a difference in the amount of interest the Government will need pay Fontaine versus the Quebec respondents is not "a significant change either in factual conditions or in law" that would render enforcement of

judgment detrimental to the public interest.  *Horne*, 557 U.S. at 447.  Indeed, it is not a change in factual conditions or law at all.

Even if the Court were to construe the difference in amount of interest as a changed circumstance, it still would be insufficient to show that the equities favor an order requiring pre-liquidation refunds, particularly given the extraordinary burden on CBP that would result from such an order.  Fontaine fails to explain *how* the higher level of interest makes it inequitable to wait until liquidation to receive refunds of cash deposits with interest, stating only that the amount of interest is "too significant to ignore."  Fontaine Mot. for Relief at 11-12.  But Fontaine gives no evidence of harm that cannot be repaired by receiving refunds of cash deposits with interest upon liquidation. [1]  And, in any event, "[b]are financial losses neither constitute nor substantiate irreparable harm, even when they signal economic damage to an entity.  This derives in part from the presumed effectiveness of corrective relief for monetary injury, provided by a Court order at a later date."  *Shanghai Tainai Bearing Co. v. United States*, 582 F. Supp. 3d 1299, 1307 (Ct. Int'l Trade 2022) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  As the Supreme Court has explained, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against

---

[1]  To the extent Fontaine relies on harm to the public fisc as guiding in favor of relief under Rule 60(b)(5), as it does with regard to its request for relief under Rule 60(b)(6), this is not the same as harm to *Fontaine*, and Fontaine fails to establish that an allegation of harm not specific to itself should be part of the consideration of the equities under Rule 60(b)(5).  Moreover, the argument that harm to the public fisc should be considered under Rule 60(b)(5) was not properly raised in Fontaine's motion, and Fontaine has not explained why alleged harm to the public fisc constitutes a significant change in factual conditions or law.  Rather, we construe the public fisc argument as applying only to Fontaine's Rule 60(b)(6) argument.  In any event, as discussed below, the alleged harm to the public fisc caused by accrued interest does not outweigh the burden on CBP or the harm that diverting such a large amount of resources would cause both to the public fisc and other importers.  Accordingly, even if properly raised and applicable to Rule 60(b)(5), the argument would still fail.

a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. at 90. This is particularly so given that "{t}he interest on any excess cash deposits paid will continue to accrue until liquidation, providing the statutory provided offset to any harm arising from the unavailability of the funds until that time." Coalition Refund Order at 15.

In contrast, and as recognized by the Court in denying the Quebec respondents' motion, if the Court were to grant Fontaine's motion, CBP would be subject to a "highly burdensome process of issuing pre-liquidation refunds." *Id.* at 17. As the Court observed, CBP's newer Automated Commercial Environment (ACE) system requires a manual, entry-by-entry process to effectuate pre-liquidation refunds that would take years to complete, and would also add weeks to the eventual liquidation process. *Id.* at 14-15; *see also* Snitker Decl. ¶¶ 4, 7-8, 10-11 (attached as Exhibit A to this response).

As we explained in our response to the Quebec respondents' motion, CBP's pre-liquidation refund process under ACE requires manual entry-by-entry review and processing. ECF No. 277 at 12; *see also* Snitker Decl. ¶ 7. Specifically, to issue pre-liquidation refunds for each affected entry, four CBP specialists (an Import Specialist, Supervisory Import Specialist, Entry Specialist, and Supervisory Entry Specialist) must take successive steps to ultimately adjust the entry summary record in ACE to remove the countervailing duty assessment from each impacted entry summary line (can be done by mass update), complete an administrative refund worksheet to document the pre-liquidation refund and upload the completed administrative refund worksheet to the ACE entry summary record, manually process the pre-liquidation administrative refund, and certify the refund for payment by the Department of the Treasury. ECF No. 277 at 12-13, Snitker Decl. ¶ 7. And, while CBP has already adjusted the entry records for most of the covered entries to remove the countervailing duty assessment, Snitker

Decl. ¶ 9, under a conservative estimate, it would still take approximately 15-25 minutes of dedicated manual processing time per each affected entry to process the refunds prior to liquidation. *Id.* at ¶ 10.

To process pre-liquidation refunds for the over 24,000 entries that are the subject of Fontaine's motion, it would take CBP nearly *four years* if ordered to dedicate the required personnel full time to the processing of the refunds. Snitker Decl. ¶ 10. Moreover, at the conclusion of the judicial and administrative proceedings pursuant to which the entries are suspended, CBP would need to manually process the entries *again* upon liquidation and liquidate consistent with all applicable law and instructions. *Id.* ¶ 8; *see* 19 C.F.R. § 24.36(a)(1)(ii) ("In the case of a refund of duties, taxes, fees or interest made prior to liquidation, such a refund will include only principal amounts and not any interest thereon. Interest on such principal amounts will be computed at the time of liquidation or reliquidation and shall accrue as follows").

In denying the Quebec respondents' motion, the Court held that "{m}ovants fail to persuade the court that any harm arising from the Government's retention of cash deposits pending liquidation outweighs this administrative burden." Here, the harm to Fontaine is not demonstrably different than for the Quebec respondents, and is still remediable by the interest it will receive in addition to the refunds. Meanwhile, the burden on CBP is markedly *greater* than in the previous case.

First, Fontaine is seeking pre-liquidation refunds for over 24,000 entries, *see* Fontaine Motion at 17—nearly double the approximately 13,000 entries that were the subject of the Quebec respondents' motion. [2] Coalition Refund Order at 17; Fontaine Mot. for Relief at 17. As

---

[2] The 24,000 number is exclusive of the subject entries covered by the first and second administrative reviews of the parallel antidumping duty order, for which Commerce has already issued liquidation instructions to CBP. *See* Fontaine Mot. for Relief at 17; Snitker Decl. ¶ 3.

such, the amount of time CBP would be required to devote to the manual processing of the refunds is substantially greater than in the previous situation.  Snitker Decl. ¶ 10.  Moreover, CBP is currently experiencing significant staffing shortages, with approximately 30 percent of the pertinent office's entry specialist positions vacant.  *Id.* ¶ 15.  Thus, diverting the resources required to manually process 24,000 refunds would cause an even greater strain on CBP's resources than before.  This is particularly so in light of the significant increase in CBP's workload as a result of duties imposed pursuant to the International Emergency Economic Powers Act (IEEPA) and Section 232 of the Trade Expansion Act of 1962.  *Id.* ¶¶ 16, 18.  Indeed, the volume of entries subject to additional duties pursuant to IEEPA and Section 232 has dramatically increased since the Court's Coalition Refund Order, and the nearly four million entries made pursuant to IEEPA are subject to special rules, including complex and continually shifting "unstacking" rules and various exemptions.  *Id.* at ¶ 18.  Given all this, the disruption to CBP that would result from an order directing it to issue pre-liquidation refunds for over 24,000 entries would be even more severe than with the Quebec respondents.

CBP is an agency with a very broad mission, *see* 6 U.S.C. § 211, and limited resources. It has determined that it does not have the resources to spare to process manual pre-liquidation refunds for over 24,000 affected entries, particularly in light of severe staffing shortages and the significant level of additional work caused by IEEPA and Section 232 tariffs.  Snitker Decl. ¶ 10, 15-21.  Consistent with the statutory framework, this Court should not curtail the agency's discretion or ignore its informed evaluation of the allocation of its resources, and need not do so

---

Since the liquidation of those entries is no longer suspended, the entries will be liquidated—with refunds of the countervailing duty deposits plus interest—consistent with the Court's order and Commerce's instructions, within the timeframe prescribed in 19 U.S.C. § 1504(d).  For the remaining subject entries, liquidation remains suspended pursuant to separate instructions from Commerce, due to ongoing judicial and administrative proceedings.  Snitker Decl. ¶ 3.

to make Fontaine whole because the statutory remedy of refunds with interest upon liquidation is sufficient.

## III.    Fontaine Is Not Entitled to Relief Under Rule 60(b)(6)

Fontaine claims that, even if relief is not available under Rule 60(b)(5), the Court should still grant it relief under Rule 60(b)(6) because the case is unusual and fits the "extraordinary circumstances" requirement. Fontaine Mot. for Relief at 12. We do not dispute that this case is unusual, but simply being unusual, or even extraordinary, is insufficient to merit relief. Rather, Fontaine must show that the relief requested "is appropriate to accomplish justice." *CEATS*, 755 F.3d at 1361. This, it cannot do.

According to Fontaine, given the unique circumstances of the case and the amount of interest it calculates the Government will owe, CBP has abused its discretion by not issuing pre-liquidation refunds, as "protecting the public fisc requires timely return of excess duty deposits." Fontaine Mot. for Relief at 16. Fontaine asserts that the calculus in weighing the burden on CBP should change in light of the amount of interest that will accrue, claiming that the quantifiable cost of providing pre-liquidation refunds is less than the amount of interest that will accrue in the absence of pre-liquidation refunds. *Id.* at 17-18. This argument misses the mark in numerous respects. First, Fontaine simply assumes that CBP can hire and train employees dedicated solely to the processing of pre-liquidation refunds. But the Federal Government has been subject to extremely stringent hiring restrictions and CBP is currently experiencing significant staff shortages, with the office responsible for processing Fontaine's entries suffering an approximately 30 percent reduction in staffing for entry specialist positions. Snitker Decl. ¶ 15.

Second, Fontaine's argument ignores the harm that would be caused if CBP were to be required to divert a significant portion of its strained resources to processing Fontaine's refunds

prior to liquidation. Fontaine is not the only company with entries administered by CBP. In fiscal year 2025 alone, the relevant office at CBP was responsible for processing approximately 248,000 entries subject to antidumping or countervailing duties, amounting to over $908 million in antidumping and countervailing duties—a far greater amount than the amount Fontaine calculates would accrue in interest on its entries. Snitker Decl. ¶ 17. Requiring CBP to spend its extremely limited resources on processing Fontaine's pre-liquidation refunds would have a detrimental effect on not only the respondents subject to the more than 1,350 antidumping and countervailing duty instructions issued by Commerce, but up to 71,000 individual importers of record. *Id.* ¶¶ 16-17. The equities do not favor focusing on Fontaine's entries at the expense of tens of thousands of other companies subject to duties.

Third, while Fontaine cites the amount of interest that it calculates would accrue in the absence of pre-liquidation refunds, it ignores the likelihood of much greater harm to the public fisc that would ensue if CBP were required to divert a significant portion of its limited resources to processing Fontaine's pre-liquidation refunds. As explained by the Assistant Director for Trade Operations at the affected office, diverting these limited resources would prevent CBP from adequately performing its mission, which includes revenue protection and collection. Snitker Decl. ¶ 20. Given that the CBP office responsible for processing Fontaine's entries is also responsible for over 71,000 other importers' entries, collecting more than $733 million in duties, taxes, and fees *per month* during the past fiscal year, Snitker Decl. ¶ 16, the disruption to CBP's revenue protection and collection operations alone would amount to significantly more than the amount of interest Fontaine asserts would accrue on its entries.

While this case may involve unusual circumstances, those circumstances do not merit limiting CBP's statutory discretion over whether to issue pre-liquidation refunds, and justice

would not be accomplished by focusing on Fontaine's entries at the expense of tens of thousands of other importers and preventing CBP from continuing to perform its mission, which includes the protection and collection of billions of dollars in revenue.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Fontaine's motion for relief from judgment.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

| | |
|---|---|
| Of Counsel | /s/Sosun Bae |
| | SOSUN BAE |
| JESUS SAENZ | Senior Trial Counsel |
| Senior Attorney | Department of Justice |
| U.S. Department of Commerce | Civil Division, Commercial Litigation Branch |
| Office of the Chief Counsel | PO Box 480, Ben Franklin Station |
|   for Trade Enforcement and Compliance | Washington, D.C. 20044 |
| Washington, D.C. 20230 | tel.: (202) 305-7568 |
| | Sosun.Bae@usdoj.gov |
| Dated: January 28, 2026 | Attorneys for Defendant |

13

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chambers Procedure 2(B)(2) of the United States Court of International Trade, I certify that this response filed by the United States, contains 3,810 words, excluding those portions that do not count toward the word limitation and, thus, complies with the Court's Chambers Procedures.

<u>/s/Sosun Bae</u>
Sosun Bae

14

# EXHIBIT A

UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

FONTAINE INC.,

         Plaintiff,

   v.

UNITED STATES,

        Defendant.

</td><td>

Before:  Hon. Mark A. Barnett,
Chief Judge
Consol. Ct. No. 19-00154

</td></tr>
</table>

**DECLARATION OF CONNOR SNITKER**

      I, Connor Snitker, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1.     I am the Assistant Director for Trade Operations (formerly Validation and Compliance) at the Industrial and Manufacturing Materials ("IMM") Center, Office of Field Operations, U.S. Customs and Border Protection ("CBP").  I have held this position since December of 2023. Previously, I served as a Program Manager for the Trade Operations Division within Office of Field Operations Headquarters, Cargo and Conveyance Security Directorate, for a period of six years, and as an Import Specialist prior to that.

2.     As the Assistant Director for Validation and Compliance at the IMM Center, my responsibilities include (among other things) overseeing the IMM Center's implementation of CBP's policies and procedures related to the agency's administration of Department of Commerce ("Commerce") orders and instructions related to antidumping and countervailing duties ("AD/CVD").

3.      The IMM Center is the CBP Center assigned to process the entries of imported

merchandise that are subject to Commerce's CVD instructions to CBP in Message No. 5142409

(May 22, 2025).  The CVD instructions in Message No. 5142409 cover over 24,000 entries made

after 2019, for which liquidation remains suspended pursuant to separate AD instructions.  For

the pre-2020 entries covered by the CVD instructions in Message No. 5142409, which are

covered by Commerce's first and second administrative reviews of the corresponding AD order,

CBP received notice of the lifting of suspension of liquidation for the associated AD assessment

on January 22, 2026, as indicated in Commerce's AD instructions to CBP in Message Nos.

6022402 and 6022407.

4.      CBP's current system of record for the collection and refund, as appropriate, of estimated

or assessed duty for imported merchandise is the Automated Commercial Environment ("ACE"),

which includes multiple modules with different functionalities, including the ACE Entry

Summary module, for processing entry summaries as needed to properly assess duties on the

merchandise, and the ACE Collections module, for processing the collection (and refund, as

appropriate) of duties or estimated duty deposits associated with the entry summaries in the ACE

Entry Summary module.

5.      Prior to ACE, CBP's previous system of record for entry summaries and duty collection

was the Automated Commercial System ("ACS").  Unlike ACE, which is a web-based system,

ACS was a disk operating system, which was antiquated and ultimately inadequate for CBP's

mission needs.  ACE, now on its second generation, is the modernized commercial environment

and user interface for the trading community and CBP.  The transition to ACE from ACS took

place over several years, with certain functions being decommissioned as they were rebuilt in

ACE.  Collections was the last portion of ACS to transition to ACE, and was implemented through phased releases in ACE.  As relevant to refunds, "ACE Collections Release 6," deployed on August 29, 2022, and focused on the management of refunds and included changes to the ability to search, create, and review/certify refunds.  After August 29, 2022, all duty or estimated duty refunds must be processed by CBP using the ACE Collections module, and ACS is no longer available and cannot be used.

6.     To process preliquidation administrative refunds for over 24,000 entries would divert thousands of working hours of at least four IMM Center specialists, who are otherwise needed to administer and enforce the customs and trade laws with respect to entries of imported merchandise that are assigned to the IMM Center for processing, including entries of merchandise subject to many other AD/CVD orders, and other trade remedies imposed under various additional authorities, such as—in recent months—the International Emergency Economic Powers Act (IEEPA).

7.     Specifically, to process a preliquidation administrative refund is a manual, entry-by-entry process that requires Import Specialist review, Supervisory Import Specialist approval, Supervisory Entry Specialist approval, and finally an Entry Specialist manually processing each entry and certifying the refund to the Department of Treasury.  The Entry Specialist must manually access each collection record, remove the money, and set it for preliquidation administrative refund.  Following that, a different Entry Specialist is required to review each refund by looking at the entry in the ACE Entry Summary module, reviewing that the process was completed properly and approving signatures are in place, then manually mark it in ACE Collections (a different module of ACE than the Entry Summary) as "reviewed," and then a

3

different Entry Supervisor is required to manually certify each refund in ACE Collections after reviewing what the reviewing Entry Specialist did.

8.    After a preliquidation refund is processed, following the manual entry-by-entry process described in paragraph 7 above, additional manual entry-by-entry processing time will be required to process the interest calculation at the time of liquidation.  Unlike the normal, partially automated, liquidation and interest calculation process as described below, for entries for which a preliquidation refund is processed, an Entry Specialist must manually identify such entries and calculate the relevant interest due for each entry based on the relevant dates of deposit and preliquidation refund.  This additional processing time at the time of liquidation also adds to the burden of processing more than 24,000 entries outside of the normal processes, because this would add manual processing time to the otherwise partially automated normal liquidation process.

9.    In preparation for liquidation consistent with Commerce's instructions to CBP in Message No. 5142409, CBP has already adjusted the entry records for most of the covered entries to remove the CVD assessment.

10.    A conservative estimate for the average total processing time for the remaining steps for preliquidation refunds for these entries is in the range of approximately 15-25 minutes of dedicated manual processing time per each affected entry.  Accordingly, using the average of this conservative time range for the per-entry processing time, i.e., 20 minutes,[1] and assuming that

---

[1] In a previous declaration, CBP AD/CVD Policy and Programs Director Alexander Amdur used the lowest amount of time from this conservative range, 15 minutes per entry, to arrive at the most conservative total estimated processing time to issue preliquidation refunds for approximately 13,000 entries.  However, given an already conservative estimate for average total processing time is 15-25 minutes per entry, it is more appropriate to use 20 minutes per entry for the calculation, as that is the average of the conservative time range.

the processing flows as smoothly as possible without any unexpected issues, the IMM Center would spend nearly four years if it were to dedicate the required personnel full time to the processing of preliquidation refunds for over 24,000 of these entries (20 minutes per entry multiplied by 24,000 entries = 480,000 minutes = 8,000 hours = 1,000 8-hour working days = 200 5-day work weeks = 3.85 52-week years).

11.    In accordance with applicable law and CBP policy, the IMM Center will process the refunds due pursuant to Commerce's instructions to CBP in Message No. 5142409 upon the liquidation of the subject entries, with interest as provided by law.  Using its normal semi-automated liquidation processes, the IMM Center can process the liquidation, with refunds plus interest, for all entries covered by the instructions in Message No. 5142409 relatively quickly after the entry records are adjusted to conform to all applicable liquidation instructions.  But to process preliquidation refunds for the same entries would take the Centers years to complete, and would add weeks to the liquidation process down the road as well.

12.    In 2019 and 2020, the IMM Center processed approximately 8,000 preliquidation administrative refunds of CVD deposits for entries of softwood lumber.  However, this was done using processes that are no longer in place, and under a different system of record that predated the current system of record of the entry of merchandise and associated duty assessment and collection, which is ACE (see paragraph 5 above describing the transition from ACS to ACE).

13.    It is not operationally possible for the IMM Center to replicate the process that was previously employed to process several thousand preliquidation refunds.  The system of record has changed, as have CBP's policies with regard to preliquidation refunds, the evolution of which was informed by lessons learned from prior experience under the old system.  In

5

particular, CBP learned from the prior experience in 2019-2020 that it needed to implement greater controls on the preliquidation refund process, resulting in more processing time as needed to ensure accuracy and protection of the revenue. The legacy system (ACS) allowed for customs scripts to be developed on an ad hoc, case-by-case basis, which allowed for more flexibility but also increased the potential for error and inconsistency. The new system (ACE) is more standardized, and incorporates more mass processing functionalities, as well as greater internal controls, reducing the opportunity for error by reducing the flexibility for users to deviate from standard processes.

14.      Because the interest that is due for refunds of excess estimated duties deposited is determined by law only when the entry is liquidated or reliquidated, preliquidation refunds of estimated duty deposits do not include interest, which CBP must still calculate upon liquidation. One of the problems that CBP discovered with the 2019-2020 preliquidation refunds that were processed in the prior system (ACS, see paragraphs 5 and 11 above) was that CBP was not able to flag the entries for which preliquidation refunds of estimated duty deposits were issued but interest still needed to (manually) calculated and issued at liquidation, so the entries were inadvertently liquidated without the interest, and then had to be either reliquidated pursuant to 19 U.S.C. § 1501, or after protest pursuant to 19 U.S.C. §§ 1514 and 1515, resulting in significant additional burden to CBP, as well as to importers (where protest was needed). Under ACE, because the law still requires that interest for refunds of excess estimated duties deposited be calculated upon liquidation or reliquidation, when preliquidation refunds are issued, the entries must then be flagged, caught, and manually adjusted for "Complex Change Liquidation," whereby interest is calculated and issued for refunds that were previously already processed.

Because this involves deviating from the standard process of using ACE mass processing functionality to calculate interest at the same time as refunding the excess duties (upon liquidation or reliquidation), such liquidations are complex and manual, and thus time-consuming and subject to increased risk of error. Were the IMM Center to be required to process preliquidation refunds for the over 24,000 entries at issue, not only would it take the Center years to process the initial refunds, the Center would again have to manually process each of the entries for the interest calculation upon liquidation, and potentially process additional protests regarding interest that would not be necessary if the standard ACE mass processing functionality is used to expeditiously and accurately process the refunds with interest upon liquidation (see paragraph 11 above).

15.    Furthermore, the IMM Center is currently experiencing significant staff shortages. Currently, approximately 30 percent of the Center's 25 Entry Specialist positions are vacant.

16.    The IMM Center is currently responsible for over 71,000 individual importer of record accounts. On average, the IMM Center collected more than $733 million in duties, taxes and fees per month over the course of the past fiscal year, which is a significant increase from the prior fiscal year. These duties include AD/CVD duties, regular customs duties, and additional duties imposed (with subsequent modifications) pursuant to IEEPA, Section 232 of the Trade Expansion Act of 1962, and Sections 201 and 301 of the Trade Act of 1974 ("IEEPA and Sections 232/201/301").

17.    Commerce assigns, and shares with CBP in its AD/CVD instructions, unique identifiers called "Case Numbers," which are used by the importers and CBP to respectively declare and assess AD/CVD for entries of merchandise from specific producers and/or exporters that is

7

subject to specific Commerce AD/CVD proceedings.  The IMM Center is currently processing

thousands of entries that are subject to approximately 180 separate AD/CVD Case Numbers

(approximately 40 percent of all currently active AD/CVD Case Numbers).  The IMM Center is

CBP's Lead Center, based on the number of entries with merchandise covered by a particular

Case Number, for approximately 18 percent of all currently active AD/CVD Case Numbers.  In

fiscal year 2025, the IMM Center was responsible for processing approximately 248,000 entries

subject to AD/CVD, amounting to approximately 37 percent of all AD/CVD entries filed during

that time period nationwide, associated with over $908 million in AD/CVD duties, including

reviewing and processing over 1,350 separate Commerce AD/CVD instructions, resulting in

approximately $130 million in AD/CVD bills and $111 million in AD/CVD refunds issued upon

liquidation.

18.    In addition to AD/CVD and regular customs duties, the IMM Center also processes the

enforcement and collection of duties imposed pursuant to IEEPA and Sections 232/201/301.  In

fiscal year 2025, the volume of entries subject to additional duties pursuant to IEEPA and

Section 232 dramatically increased.  Nearly all of the approximately 4 million entries made since

April 5, 2025 that are assigned to the IMM Center are currently subject to special rules

concerning IEEPA tariffs, including complex and continually shifting "unstacking" and various

exemption rules.

19.    The IMM Center's Entry Specialists are required by law or policy to perform

approximately 20 separate functions daily related to entry processing, revenue protection and

enforcement, as well as approximately 15 additional functions weekly, and approximately 10

additional functions monthly.

20.     If the IMM Center were to divert its limited resources to process preliquidation refunds for the tens of thousands of entries that are covered by Commerce's instructions to CBP in Message No. 5142409, the Center's processes described above would be severely disrupted and the Center could not continue to adequately perform its mission, including its revenue protection and collection functions.

21.     In light of the current volume of entry processing work, and because the IMM Center's entry processing work has recently increased dramatically while coinciding with staffing shortages, the IMM Center cannot currently take on any additional discretionary work, such as processing discretionary preliquidation refunds for entries for which the normal liquidation process would make the importer whole with interest as provided by law.

Digitally signed by
CONNOR A SNITKER
Date: 2026.01.28
12:36:43 -06'00'

Connor Snitker
Assistant Director, Trade Operations
Industrial & Manufacturing Materials Center
Office of Field Operations
U.S. Customs and Border Protection