**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| **FONTAINE INC.,**<br><br>　　　　**Plaintiff,**<br><br>　　　v.<br><br>**UNITED STATES,**<br><br>　　　　**Defendant**<br><br>　　　and<br><br>**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTATIONS,**<br><br>　　　　**Defendant-Intervenor.** | **PUBLIC VERSION**<br><br>**Court No. 19-00154** |

**DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO FONTAINE'S
MOTION FOR RELIEF UNDER RULE 60(b)(5) AND RULE 60(B)(6)**

　　　　　　　　　　　　　　　　　　　Sophia J.C. Lin
　　　　　　　　　　　　　　　　　　　Jarret Williamson

　　　　　　　　　　　　　　　　　　　**PICARD KENTZ & ROWE LLP**
　　　　　　　　　　　　　　　　　　　1155 Connecticut Ave. NW, Suite 700
　　　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　　　(202) 331-4040

　　　　　　　　　　　　　　　　　　　*Counsel to the COALITION*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| **FONTAINE INC.,** | |
|     **Plaintiff,** | |
| v. | |
| **UNITED STATES,** | |
|     **Defendant** | **Court No. 19-00154** |
| and | |
| **COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTATIONS,** | |
|     **Defendant-Intervenor.** | |

**PROPOSED ORDER**

Upon consideration of the Motion for Relief (ECF No. 53) filed by Fontaine Inc., as well as all other papers and proceedings had herein, it is hereby:

**ORDERED** that the motion is **DENIED**.

By: _____
    The Honorable Mark A. Barnett,
    Chief Judge

Dated: _____

**TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND ........................................................................................ 1

II.  LEGAL STANDARD ................................................................................................... 4

III. ARGUMENT ................................................................................................................. 5

    A.   FONTAINE FAILS TO MEET ITS BURDEN FOR RELIEF UNDER RULES 60(B)(5) ................................................................................................ 6

    B.   RELIEF UNDER RULE 60(B)(6) IS NOT APPROPRIATE ............................ 8

    C.   CBP HAS BROAD DISCRETION TO ISSUE PRELIQUIDATION REFUNDS UNDER 19 U.S.C. § 1520(A)(4) .......................................................... 9

IV.  CONCLUSION ............................................................................................................11

# TABLE OF AUTHORITIES

## CASES

BLOM Bank Sal v. Honickman, 605 U.S. 204 (2025) ................................................................... 5

Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 483 F.Supp.3d 1253 (Ct. Int'l Trade 2020) ..................................................... 2

Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 665 F.4th 968 (Fed. Cir. 2023) ................................................................... 2

Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 665 F.Supp.3d 1347 (Ct. Int'l Trade 2023) ................................................. 2, 4

Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 755 F.Supp.3d 1317 (Ct. Int'l Trade 2025) ..................................................... 3

Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 779 F.Supp.3d 1300 (Ct. Int'l Trade 2025) ............................................... passim

Heckler v. Chaney, 470 U.S. 821 (1985) ..................................................................................... 11

Horne v. Flores, 557 U.S. 433 (2009) ........................................................................................... 5

Klapprott v. United States, 335 U.S. 601 (1949) .......................................................................... 5

Lazare Kaplan Inter., Inc. v. Photoscribe Technologies, Inc., 714 F.3d 1289 (Fed. Cir. 2013) ..... 5

Marquip, Inc. v. Fosber America, Inc., 198 F.3d 1363 (Fed. Cir. 1999) ....................................... 5

Pirkl v. Wilkie, 906 F.3d 1371 (Fed. Cir. 2018) ............................................................................ 5

Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992) ....................................................... 5

Tapper v. Hearn, 833 F.3d 166 (2d Cir. 2016) .............................................................................. 5

## STATUTES

19 U.S.C. § 1520(a)(4) .................................................................................................................. 9

## ADMINISTRATIVE DETERMINATIONS

Certain Softwood Lumber Products From Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) .................................................................................................................. 1

Certain Softwood Lumber Products From Canada: Antidumping Duty Order and Partial Amended Final Determination, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018) .................. 1

Certain Softwood Lumber Products From Canada: Final Results of Countervailing Duty Expedited Review, 84 Fed. Reg. 32,121 (Dep't Commerce July 5, 2019) ................................. 2

Certain Softwood Lumber Products From Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates, 86 Fed. Reg. 48,396 (Dep't Commerce Aug. 30, 2021) ................................................................................ 2

## OTHER AUTHORITIES

Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 84 Fed. Reg. 2,816 (Dep't Commerce Feb. 8, 2019) ............. 1

### DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO FONTAINE'S MOTION FOR RELIEF UNDER RULE 60(b)(5) AND RULE 60(B)(6)

Defendant-Intervenor, the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (the "COALITION"), respectfully submits this response in opposition to Fontaine Inc.'s motion for relief from judgment. See Rule 60(b)(5) Motion, and Alternative Rule 60(b)(6) Motion, For Relief from Final Judgment, Oct. 9, 2025 ("Fontaine Mot."), ECF No. 53. As explained below, Fontaine fails to demonstrate that it is entitled to relief under the respective rule.

### I.     FACTUAL BACKGROUND

Commerce published antidumping ("AD") and countervailing duty ("CVD") orders on softwood lumber from Canada on January 3, 2018. Certain Softwood Lumber Products From Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) ("CVD Order"); Certain Softwood Lumber Products From Canada: Antidumping Duty Order and Partial Amended Final Determination, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018) ("AD Order").

On February 8, 2019, Commerce published a notice of opportunity to request administrative reviews for both the CVD and AD Order. See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 84 Fed. Reg. 2,816 (Dep't Commerce Feb. 8, 2019). Several Canadian exporters of softwood lumber, including Fontaine, filed requests for expedited reviews. On July 5, 2019, Commerce published the final results for the CVD expedited review, finding that the subsidy rates for five of the Canadian exporters ("*de minimis* parties") were below *de minimis*, while Fontaine's subsidy rate was above *de minimis*. Certain Softwood Lumber Products From Canada: Final Results of Countervailing Duty Expedited Review, 84 Fed. Reg. 32,121 (Dep't

1

Commerce July 5, 2019) ("Final Results").  For the companies receiving a below *de minimis* rate, Commerce excluded them from the CVD Order and instructed CBP that "{a}ll entries of this merchandise from the producer/exporter combinations identified in paragraph 2 above, that were suspended on or after 04/28/2017 (the first date of suspension in this proceeding should be liquidated without regard to countervailing duties (i.e., refund all cash deposits)."  See Department Memorandum, "Liquidation instructions for excluded companies in the countervailing duty order on certain softwood lumber products from Canada," at 3 (Aug. 22, 2019).  Fontaine, however, was still subject to the CVD Order due to Commerce's above *de minimis* finding and was required to continue paying cash deposits.  Id.

Following the Final Results, this Court determined that Commerce lacked the authority to conduct expedited reviews.  Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 483 F.Supp.3d 1253 (Ct. Int'l Trade 2020); Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 665 F.Supp.3d 1347 (Ct. Int'l Trade 2023) ("COALITION V").  As a result, the *de minimis* parties were brought back into the Order and started paying cash deposits for countervailing duties.  See Certain Softwood Lumber Products From Canada: Notice of Court Decision Not in Harmony With the Final Results of Countervailing Duty Expedited Review; Notice of Rescission of Final Results of Expedited Review; Notice of Amended Cash Deposit Rates, 86 Fed. Reg. 48,396 (Dep't Commerce Aug. 30, 2021).  Subsequently, the Federal Circuit reversed this Court's decision and determined that Commerce did have authority to conduct expedited reviews.  Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 665 F.4th 968 (Fed. Cir. 2023).  After the Federal Circuit's decision, this Court granted a motion filed by four of the *de minimis* companies to reinstate

exclusion, ordering Commerce to "instruct CBP to liquidate, without regard to countervailing duties, all suspended entries of shipments of softwood lumber produced and exported" by the four *de minimis* companies. Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 779 F.Supp.3d 1300, 1306 (Ct. Int'l Trade 2025) ("COALITION VIII"). Commerce did so. However, "judicial and administrative proceedings associated with the parallel antidumping duty order have resulted in the continued suspension of liquidation of subject entries." Id. at 1306.

As a result, the four *de minimis* parties filed a motion before this Court asking for the Court to order preliquidation refunds. The Court denied the motion, finding that (1) "processing 'preliquidation refunds . . . would now take CBP *years* to complete, and would add weeks to the liquidation process down the road,'" and (2) the Court is not convinced that "any harm arising from the Government's retention of cash deposits pending liquidation outweighs this administrative burden." COALITION VIII, 779 F.Supp.3d at 1309. The Court further noted that it is aware that "{t}he interest on any excess cash deposits paid will continue to accrue until liquidation of the funds" until all administrative and judicial proceedings on the subject entries were finalized. Id. at 1310.

Separately, on January 21, 2025, the Court sustained Commerce's remand redetermination with respect to the agency's calculation of a subsidy program received by Fontaine. Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, 755 F.Supp.3d 1317, 1328 (Ct. Int'l Trade 2025). As a result, Fontaine's revised subsidy rate is below *de minimis,* and the company is therefore excluded from the CVD Order. Due to certain disputes related to civil procedure between Commerce and Fontaine, Commerce was delayed in issuing cash deposit and liquidation instructions to CBP.

3

See Order Granting Mot. for Leave to Seek to Enforce the J., Mot. to Enforce J., and Alternative Application for Writ of Mandamus, at 4, No. 19-00154 (Apr. 18, 2025), ECF No. 52 ("Order Granting Mot. for Leave to Seek to Enforce J."). Thus, on April 18, 2025, in response to Fontaine's motion, this Court ordered Commerce to "publish expeditiously the notice of amended final results of expedited review with respect to Fontaine that reflects the zero percent cash deposit rate determined in the agency decision on remand." Id. at 6. The Court further ordered that "the subject entries enjoined in this action must be liquidated in accordance with the final court decision, including all appeals, consistent with the requirements in {19 U.S.C. 1516a(e)}." Id. Commerce complied with the Court's order. See U.S. Customs and Border Protection Message No. 5142409, at 3-5 (May 22, 2025) ("Fontaine Liquidation Instructions").

The foregoing notwithstanding, as with the four *de minimis* companies discussed above, Fontaine's subject entries are suspended from liquidation also due to the judicial and administrative proceeding associated with the parallel antidumping duty order.[1] Fontaine now requests the Court to order preliquidation refunds of Fontaine's cash deposits pursuant to CIT Rule 60(b)(5) or (b)(6). See Fontaine Mot., ECF No. 53.

## II.  **LEGAL STANDARD**

USCIT Rule 60 governs "relief from a judgment or order." Rule 60(b) permits the court to "relieve a party or its legal representative from a final judgment, order, or proceeding" when "it is based on an earlier judgment that has been reversed or vacated," or when "applying the judgment or order prospectively is no longer equitable." USCIT Rule 60(b)(5); COALITION V,

---

[1] On January 22, 2026, Commerce issued liquidation instructions for entries covered by AD AR1 and AR2. U.S. Customs and Border Protection Message No. 6022402 (Jan. 22, 2026) ("AD AR1 Liquidation Instructions"); U.S. Customs and Border Protection Message No. 6022407 (Jan. 22, 2026) ("AD AR2 Liquidation Instructions").

665 F.Supp.3d at 1352 (Ct. Int'l Trade 2023) (citing Pirkl v. Wilkie, 906 F.3d 1371, 1381 n.6 (Fed. Cir. 2018)) (additional citations omitted).  The Second Circuit explained that Rule 60(b)(5) "is rooted in the traditional power of a court of equity to modify its decree in light of changed circumstances."  Tapper v. Hearn, 833 F.3d 166, 170 (2d Cir. 2016) (quoting Frew ex rel. Frew v. Hawkins, 540 U.S. 431 (2004)).  This provision "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'"  Horne v. Flores, 557 U.S. 433, 447 (2009) (citing Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 385 (1992)).  The burden lies on the moving party to establish that the change in circumstances warrants relief.  Id.

Rule 60(b)(6) provides relief to a party from a final judgment or order for any reason that "justifies relief" that is not enumerated in Rule 60's other provisions.  Rule 60(b)(6) is "a catchall provision" that requires a showing of "extraordinary circumstances."  BLOM Bank Sal v. Honickman, 605 U.S. 204, 204-05 (2025) (citing Klapprott v. United States, 335 U.S. 601 (1949)); Marquip, Inc. v. Fosber America, Inc., 198 F.3d 1363, 1370 (Fed. Cir. 1999); see also Lazare Kaplan Inter., Inc. v. Photoscribe Technologies, Inc., 714 F.3d 1289, 1295 (Fed. Cir. 2013) (stating that Rule 60(b)(6) "has long been limited to extraordinary circumstances") (internal citations omitted).  A court's decision to grant relief under Rule 60(b)(6) is discretionary.  Id. at 1295.

### III.     ARGUMENT

Fontaine seeks relief under USCIT Rules 60(b)(5) and 60(b)(6).  See Fontaine Mot., ECF No. 53.  However, Fontaine has failed to meet its burden under both rules.  As a result, the COALITION respectfully requests that the Court deny Fontaine's Motion.

5

### A. Fontaine Fails to Meet Its Burden for Relief Under Rules 60(b)(5)

Fontaine first seeks relief under Rule 60(b)(5). Fontaine has not identified any changed circumstances that warrant the requested relief, i.e., preliquidation refunds, under Rule 60(b)(5). Since Fontaine was found to be below *de minimis*, the Court has consistently ordered Commerce to liquidate the subject entries, and Commerce has issued instructions to CBP stating as such. See Judgment, No. 19-00154 (Mar. 13, 2025), ECF No. 47; see also Order Granting Mot. for Leave to Seek to Enforce J., ECF No. 52; Fontaine Liquidation Instructions. Throughout this time, Fontaine's entries continued to be suspended from liquidation due to the judicial and administrative proceedings associated with the antidumping duty order. The only exception is that Commerce recently issued liquidation instructions for entries covered under the first and second administrative review periods of the antidumping duty order because the judicial review of the final results of those reviews have been finalized. See AD AR1 Liquidation Instructions; AD AR2 Liquidation Instructions. In other words, Fontaine will be receiving its refunds for those periods shortly, eliminating the need for "preliquidation refunds."

Indeed, Fontaine's circumstances are almost identical to those of the four *de minimis* companies: (1) all five companies are subject to the AD Order and their entries are suspended from liquidation due to the proceedings under the AD Order; (2) they all paid cash deposits under the CVD Order for a certain period of time; and (3) these cash deposits are due for a refund at some point as a result of the companies' exclusion from the CVD Order. Fontaine's request for pre-liquidation refunds is also identical to that of the four *de minimis* companies. This Court has rejected the four *de minimis* companies' request. The same rationale applies to Fontaine's request, and the COALITION respectfully asks the Court to do so here.

Fontaine attempted to distinguish its request from that of the four *de minimis* companies by asserting that the amount of interest accruing on amounts owed by CBP to Fontaine

6

represents "a significant change from the circumstances." Fontaine Mot. 11. However, interest has similarly accrued with respect to the cash deposits paid by the four *de minimis* companies that have yet to be refunded. This is a legal requirement and a fact that the Court has noted in the very decision denying the four *de minimis* companies' preliquidation refund request. See Order, Apr. 18, 2025, ECF No. 306 at 15 (citing 19 U.S.C. § 1505(b), (c)). Differences in interest owed on Fontaine's deposits do not represent the sort of change warranting relief under Rule 60(b)(5).

Further, the balance of equities does not weigh in favor of Fontaine. This Court has previously noted that "processing pre-liquidation refunds 'is a manual, entry-by-entry process that requires' several instances of approval and review before 'an Entry Specialist manually processes each entry and certifies the refund to the Department of Treasury.'" COALITION VIII, 779 F.Supp.3d at 1309. Even then, "'a different Entry Specialist is required to review each refund,' ensuring procedural compliance, before 'a different entry supervisor . . . manually certifies each refund.'" Id. The Court concluded that the "movants fail to persuade the court that any harm arising from the Government's retention of cash deposits pending liquidation outweighs this administrative burden." Id. at 1310. Fontaine has not presented any changes to CBP's procedure for processing pre-liquidation refunds. This means that Fontaine's request would require CBP to expend significant time and money to administer the desired refunds.

On the other hand, Fontaine has not provided any evidence to show that it has been unduly harmed by CBP's decision not to process preliquidation refunds. As Fontaine explained, and as required by 19 U.S.C. § 1950(c), Fontaine's refunds are accruing interest during this interim period, and interest will continue accruing on Fontaine's excess deposits until liquidation. Fontaine Mot. 11-15. Thus, Fontaine's deposits, when returned, would not decrease in value. Fontaine has not claimed that CBP's decision not to process pre-liquidation refunds has

7

caused any financial distress, loss of business opportunities, or any other harm that may tip the scales of equity in its favor. Nor can Fontaine claim that it had any reliance interest in its deposits because, as the Court noted in April, "preliquidation refunds of AD/CVD deposits are rare and generally limited to situations involving very few entries." COALITION VIII, 779 F.Supp.3d at 1310.

For the foregoing reasons, Fontaine has failed to show that relief is appropriate under Rule 60(b)(5).

### B.     Relief Under Rule 60(b)(6) is Not Appropriate

Fontaine's requests relief under Rule 60(b)(6) in the alternative. However, the facts of this case do not rise to the level of "extraordinary circumstances." Therefore, the Court should deny relief under Rule 60(b)(6).

Fontaine first notes that the Court has previously determined that "this case is unusual" and that such a statement is probative of the extraordinary nature of this case. Fontaine Mot. 12. However, the Court's determination that "this case is unusual" was made in an entirely different context, completely untethered to the relief requested here (i.e., preliquidation refunds). Order Granting Mot. for Leave to Seek to Enforce J., ECF No. 52. In the referenced order, the Court was referring to the procedural and jurisdictional posture that ultimately led to Fontaine being assigned a *de minimis* rate. Id. What the Court did not refer to as "unusual" was CBP's stance on preliquidation refunds. Id. In fact, the Court issued—on the same day—its denial of a motion seeking preliquidation refunds. See Order, Apr. 18, 2025, ECF No. 306.

Fontaine further notes that in finding that Fontaine should not have been in the Order, the court effectively found that these deposits must be returned. Fontaine Mot. 13. However, the standard practice for returning deposits is for CBP to wait until all administrative and judicial proceedings from both the CVD and AD proceedings are finalized. Only then will liquidation

8

occur.² While Fontaine claims that, in the past, CBP has issued preliquidation refunds, the Court's Order in April made clear that "neither now, nor then, was CBP <u>required</u> to make such pre-liquidation refunds." COALITION VIII, 779 F.Supp.3d at 1309. In other words, CBP has broad discretion when deciding whether to issue preliquidation refunds and, as previously stated, CBP rarely issues preliquidation refunds of AD/CVD deposits. Put simply, the liquidation process in this case follows CBP's standard practice, which, by definition, does not amount to an extraordinary circumstance.

Thus, for the reasons explained above, Fontaine has not met the "extraordinary circumstances" standard required for relief under Rule 60(b)(6).

### C.  CBP Has Broad Discretion to Issue Preliquidation Refunds Under 19 U.S.C. § 1520(a)(4)

Fontaine next asserts that CBP has unilateral authority to issue preliquidation refunds under 19 U.S.C. § 1520(a)(4) and, by failing to wield this authority, the agency abuses its discretion and fails to protect the public fisc. Fontaine Mot. 16. This claim, however, fails to account for the broad discretion CBP enjoys under the statute and therefore should be rejected.

The statute provides that "the Secretary of the Treasury is authorized to refund duties or other receipts" if "{p}rior to liquidation of an entry or reconciliation, {} an importer of record declares or it is ascertained that excess duties, fees, charges, or exactions have been deposited or paid." 19 U.S.C. § 1520(a)(4). Fontaine asserts that this language *requires* CBP to issue refunds absent instructions from Commerce. Fontaine Mot. 14. The Court considered and rejected this exact claim in its April Order. COALITION VIII, 779 F.Supp.3d at 1309. There, the Court was clear that, while CBP may have unilateral authority to issue preliquidation refunds, this authority

---

² As Fontaine explained, CVD duty deposits on entries from 2017-2019 will be settled soon and returned automatically upon liquidation.

9

is not a duty. Specifically, the Court stated "{w}hether or to what extent CBP exercises its discretionary authority pursuant to 19 U.S.C. 1520(a)(4) in any given case is not a basis for requiring CBP to do so here." Id. at 1310. In other words, this Court has recognized that CBP is accorded vast, if not absolute, discretion under the statute. As applied here, the government has made clear that it does not intend to issue preliquidation refunds given the significant burden that doing so would create. See Defendant's Response to Plaintiff's Motion for Relief From Final Judgment, Jan. 28, 2026, ECF No. 65 at pp. 8-9. The Court found that CBP has the discretion to do so in its April 2025 Order and it should reach the same conclusion here.

      Finally, Fontaine contends that by declining to issue preliquidation refunds, CBP abuses its discretion by failing to protect the public fisc. Fontaine Mot. 16. Fontaine argues that the delay in issuing refunds would "squander millions of taxpayer dollars." Id. Seeking to substantiate this claim, Fontaine compares the additional interest the government needs to pay under the statute with the costs of CBP manually processing preliquidation refunds for Fontaine. Id. at 17. Fontaine proclaims that all CBP needs to do is hire [    ] full-time employees at the lowest rung of the government salary scale -- $40,332 per year. Id. at 17. These employees will be assigned no tasks other than processing Fontaine's 24,000-plus entries for [

] spanning an entire year. Id. Fontaine then added up the expenses of hiring these [    ] individuals for a year and "some cost for training" to conclude that "the quantifiable cost of providing pre-liquidation refunds are about $150,000." Id. at 17. Fontaine avers that this amount is insignificant compared to "the estimated [          ] in interest that will accrue after September 30, 2025." Id.

      This argument is devoid of merit and should be rejected. As an initial matter, while the notion that CBP should hire [    ] new employees with the sole purpose of satisfying

10

Fontaine's refund requests is absurd on its own, Fontaine's calculations represent a gross underestimation of the total resources required to carry out such a task.  Id. at 17-18.   Namely, each preliquidation refund requires review of two Entry Specialists, certification by an Entry Supervisor, and processing by the Department of the Treasury.  COALITION VIII, 779 F.Supp.3d at 1310.  Fontaine did not include the time and resources required for the second Entry Specialist, the Entry Supervisor, and Treasury staff required to complete the process of issuing preliquidation refunds.  Further, Fontaine's argument essentially asks the Court to dictate how the executive branch should best expend its resources.  This contradicts well-established case law.  For example, in 1985, the Supreme Court held that it is for the agency to assess and determine whether it "has enough resources to undertake the action at all."  Heckler v. Chaney, 470 U.S. 821, 831 (1985).  The Supreme Court further held that the "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  Id. at 831-32.  For these reasons, the Court should reject Fontaine's argument in this regard.

### IV.   CONCLUSION

For the reasons discussed above, the COALITION respectfully requests that this Court deny Fontaine's Motions for Relief.

                Respectfully submitted,
                /s/ Sophia J.C. Lin

                Sophia J.C. Lin
                Jarret Williamson

                **PICARD KENTZ & ROWE LLP**
                1155 Connecticut Ave. NW, Suite 700
                Washington, DC 20036
                (202) 888-0595

                *Counsel to the COALITION*

January 28, 2026

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| FONTAINE INC., <br><br>  Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br>  Defendant <br><br> and <br><br> COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTATIONS, <br><br>  Defendant-Intervenor. | Court No. 19-00154 |

## CERTIFICATE OF COMPLIANCE WITH THE WORD LIMITATION

I, Sophia J.C. Lin, hereby certify that these comments, exclusive of the table of contents, table of authorities, certifications of counsel, and counsel's signature block, but including headings, footnotes, and quotations contains 3,405 words, according to the word count function of the word processing program used to prepare this filing, and therefore complies with the word limitations as set forth in ¶ 2(B) of the Standard Chambers Procedures of this Court, as amended on January 23, 2023.

/s/ Sophia J.C. Lin
Sophia J.C. Lin
**PICARD KENTZ & ROWE LLP**
*Counsel to the COALITION*